JONATHAN M. KULLER, ESQ. ATTY **ID 009731976**
**GOLDBERG SEGALLA LLP**
902 Carnegie Center, Suite 100
Princeton, New Jersey 08540-6530
Mailing Address:  PO Box 580, Buffalo, NY 14201
Ph. 609-986-1315 - Fax 609-986-1301
JKuller@goldbergSegalla.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LM INSURANCE CORPORATION<br>175 Berkeley Street<br>Boston, Massachusetts 02117<br><br>          Plaintiff,<br><br>v.<br><br>HRM ENTERPRISES, LLC<br>37 Tar Heels Road East<br>Hamilton, NJ 08619<br><br>          Defendant. | **Civil Action No.**<br><br><br><br>**COMPLAINT** |

Plaintiff, LM Insurance Corporation, by its attorneys Goldberg Segalla LLP, hereby complains of the defendant as follows:

### PARTIES

1.      Plaintiff LM Insurance Corporation ("LM") was at all relevant times an Illinois corporation with its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02117.

2.      At all times relevant defendant HRM Enterprises LLC ("HRM") has been a limited liability company of the State of New Jersey.

3.      At all times relevant the Sole Member of HRM has been Enrique Tunjano ("Tunjano").

4.      At all times relevant Tunjano has been a citizen of the State of New Jersey.

- 1 -

## JURISDICTION AND VENUE

5.     This is a civil action wherein jurisdiction is founded on diversity of citizenship. The amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest as specified in 28 U.S. § 1332.

6.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND

## THE NEW JERSEY WORKERS' COMPENSATION INSURANCE PLAN

7.     New Jersey has a voluntary market for the buying and selling of workers' compensation insurance.  In New Jersey's voluntary market, an employer may purchase workers' compensation insurance from any authorized carrier that is willing to underwrite the coverage.

8.     For many reasons, an employer may not be able to locate an authorized carrier that is willing to voluntarily underwrite the required coverage.

9.     In response, the State of New Jersey has a created a residual or involuntary market known as the New Jersey Workers' Compensation Insurance Plan ("New Jersey Plan"), for employers who cannot obtain coverage in the voluntary market.

10.     The New Jersey Plan is the State created and sanctioned means by which an employer may satisfy its legal obligation to provide workers' compensation coverage if unable to purchase workers' compensation coverage in the voluntary market.

11.     In New Jersey, the Commissioner of Banking and Insurance has delegated to the New Jersey Compensation Rating and Inspection Bureau ("CRIB"), pursuant to its statutory authority (N.J.S.A. 34:15-90.2, *et. seq.*), the responsibility for administering the New Jersey Plan.

21110381.v1

12. CRIB, in administering the New Jersey Plan, designates eligible insurance companies to insure eligible employers.

13. At all relevant times, coverage through the New Jersey Plan has been available to any employer in good faith entitled to insurance under the law who is unable to secure workers' compensation insurance in the voluntary market and who does not have outstanding any uncontested, unpaid premium in connection with any workers' compensation and employers liability insurance. A copy of the New Jersey Plan as effective during the relevant time period is attached hereto and made part hereof, designated **Exhibit A**, see page 2, paragraph 8(2).

14. At all relevant times, the New Jersey Plan provided in pertinent part: "**The employer accepts all of the provisions of the plan** and complete responsibility for the statements in the Application Form when he affixes his signature thereto." See **Exhibit A** page 1, paragraph 2. (Emphasis added).

15. At all relevant times, the New Jersey Plan provided that workers' compensation and employers liability insurance provided under it was subject to the rules, rates, minimum premiums, calculations and applicable rating plans of the New Jersey Workers' Compensation and Employers Liability Insurance Manual ("Manual"). See **Exhibit A**, page 3, paragraph 8(7). The Manual is promulgated by CRIB pursuant to N.J.S.A. 34:15-90.2 *et seq.* and has been filed with and approved by the Commissioner of Banking and Insurance.

16. Pursuant to N.J.S.A. 34:15-90.2 the Manual governs the underwriting and auditing of workers' compensation and employer's liability insurance policies in the State of New Jersey.

17. Further, an employer who applies for coverage in accordance with the New Jersey Plan agrees that the Manual shall be applicable to the insurance obtained via the New Jersey Plan.

- 3 -

## HRM'S APPLICATION FOR COVERAGE THROUGH THE NEW JERSEY PLAN

18.    On or about January 24, 2017 HRM, with the assistance of its producer, TransAmerican Associates, Inc. completed and submitted to CRIB an application for an insurance company to be designated to provide insurance to it in accordance with the New Jersey Plan and the Manual.  A true copy of same is attached hereto and made part hereof, designated **Exhibit B** (the "Application").

19.    The Application contained a Certification which was executed by Tunjano.  The Certification provided in pertinent part:

> I hereby acknowledge that I have fully read the instructions related to the completion of this application as well as above statements and personally certify that the foregoing statements and information contained in this application are true and accurate to the best of my knowledge and, that I, as an owner/operator, am fully authorized to sign this application on behalf of the applicant, and to bind the applicant.  I understand that under New Jersey criminal law, insurance fraud is punishable by up to ten (10) years imprisonment and fines up to $150,000, as well as civil penalties authorized by the New Jersey Insurance Fraud Prevention Act. If this application for coverage represents an electronic submission for coverage, I further acknowledge receipt of copies of all instruments relating to such submission, including the instructions for completion application, the fully completed application and addendums and the authorization for release of funds and certification.
>
> I understand that, as the applicant, the information provided herein is material and will be relied upon by the Compensation Rating & Inspection Bureau, as well as by the designated insurance company, to produce the requested insurance and will be used to calculate my preliminary workers' compensation premium.
>
> I also understand that I have continuing obligation to promptly notify the designated carrier of changes in:
>
> - The kind of work conducted by the business
> - The size of and/or classification of our workforce
> - The amount of remuneration
> - The business ownership or business structure
> - Change of mailing address and/or principal physical location

- 4 -

I agree to make available all records necessary for a carrier or rating bureau audit and to permit the auditor or other representative to make a physical inspection of our premises/operations. I understand that failure to do this may result in termination of the coverage provided, civil penalties and/or criminal prosecution.

It is further understood that if there is workers' compensation liability under the law(s) of any other state(s), other arrangements must be made.

In accordance with New Jersey law, if I/we intentionally understate or conceal, remuneration, or misrepresent or conceal employee duties, so as to avoid proper classification for premium calculations, or misrepresent or conceal information pertinent to the computation and application of an experience rating modification factor, I/we shall be subject to civil penalties authorized by the New Jersey Insurance Fraud Prevention Act, as well as prosecution under the criminal laws of this State.

20.     In executing the Certification and the Application to CRIB, HRM agreed and represented, *inter-alia*, that:

    a.    The provisions of the New Jersey Plan would be applicable.

    b.    The provisions of the Manual would be applicable.

    c.    That it would provide true and correct information.

    d.    That it would cooperate fully with any assigned carrier.

    e.    That it would inform any assigned carrier promptly of any changes in the underwriting information provided.

21.     In conjunction with the Application, HRM completed, executed and submitted a Truckers Supplemental Request Form.  A true copy of same is attached hereto and made part hereof, designated **Exhibit C**.

22.     The Truckers Supplemental Request Form contained a Certification which was executed by Tunjano on behalf of HRM.  The Certification provides in pertinent part:

## CERTIFICATION

I certify that I have read an(d) understand the statements in this form.  Also, I certify that the statements in this form as true and agree to the following conditions:

- 5 -

     A.    To maintain a complete payroll transaction record as the insurance company may require, and to have these records available to the company and Rating Bureau at the business address…

23.    In Box 10 on the Application asked: "Do you use subcontractors?"  The response given was: No  ☑

24.    Box 8 of the Truckers Supplemental Request Form asked: "Do you use any owner-operators?"  The response given was: No  ☑

25.    The Manual, Part III, section 1, page 1, paragraphs 1 and 1.1 provided in pertinent part that the Rules, Classifications, Rates and Rating Plans in the Manual shall govern the writing of policies, audit of payrolls and adjustment of premiums.  See **Exhibit D** attached hereto and made part hereof.

26.    Part III, section 3, page 9, paragraph 46 of the Manual was entitled "Hired Vehicles."  It provided:

> If vehicles, including drivers, chauffeurs and helpers are employed under contract and if the owner of such vehicles has not insured its compensation obligation and furnished evidence of such insurance, the actual payroll of the drivers, chauffeurs and helpers shall be included in the payroll of the insured employer at the proper rate for the operations in which the insured employer is engaged.  If such payroll cannot be obtained, one-third (1/3) of the total amount paid for the hire of such vehicle under contract shall be considered as the payroll of the drivers, chauffeurs and helpers.  If the proprietor or partners who own the vehicles are also drivers, one-third (1/3) of the contract amount for the vehicles operated by such proprietor or partners shall be included in the payroll of the insured employer.  Such amounts shall exclude fuel surcharge costs, in accordance with Interstate Commerce Commission regulations provided the employer's books and records are maintained to show such costs separately and in summary.

See **Exhibit E** attached hereto and made a part hereof.

27.    Accordingly, pursuant to the New Jersey Plan, the Application, and Manual the "Hired Vehicle Rule" was applicable to insurance applied for and obtained by HRM through the New Jersey Plan.

28.     Pursuant to N.J.S.A. 34:15-79, HRM would be liable if an employee of an owner/operator were injured and the owner/operator did not maintain workers' compensation insurance.

29.     The "Hired Vehicle Rule" represents, in part, CRIB's determination of the manner in which the workers' compensation exposure generated by remuneration paid for the hire of vehicles, including drivers, if not otherwise insured shall be addressed as between an insurer and employer.  HRM agreed to this treatment when it applied for coverage pursuant to the New Jersey Plan.

30.     N.J.S.A. 34:15-87 provides in pertinent part:

> No policy of insurance against liability arising under this chapter shall contain any limitation on the liability of the insurer to an amount less than that payable by the assured on account of its entire liability under this chapter, and no provision of such policy shall be construed to restrict the liability of the insurer to any stated business, plant, location or employment carried on by an assured unless the business, plant, location or employment excluded by such restriction shall be concurrently separately insured or exempted as provided for in this article.

31.     Thus, pursuant to N.J.S.A. 34:15-87 and otherwise, HRM could not lawfully seek and no assigned carrier could lawfully provide workers' compensation coverage to HRM for anything less than the entire exposure of HRM, including but not limited to exposure pursuant to N.J.S.A. 34:15-79.

## LM IS ASSIGNED TO PROVIDE COVERAGE TO HRM

32.     By Notice of Designation dated January 27, 2017 CRIB designated LM to provide coverage to HRM, effective January 25, 2017.

33.     Pursuant to the Application, the Notice of Designation, the New Jersey Plan, the Manual and relevant provisions of Title 34 of the New Jersey Revised Statutes LM issued to HRM workers' compensation and employers liability policy WC5-33S-372 832-017.

21110381.v1

34.     Policy WC5-33S-372832-017 is sometimes hereinafter referred to as "the LM Policy."

35.     The LM Policy stated in pertinent part:

**C.     Remuneration**
Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

(1)     All your officers and employees engaged in work covered by this policy; and

(2)     All other persons engaged in work that could make us liable under Part One (Workers' Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers' compensation obligation.

**E.     Final Premium**
The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance…

**F.     Records**
You will keep records of information needed to compute premium. **You will provide us with copies of those records when we ask for them**. (Emphasis added).

**G.     Audit**
**You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data.** We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision. (Emphasis added).

36.    In addition, the LM Policy had a New Jersey Workers' Compensation Insurance Plan Eligibility endorsement.  Each such endorsement provided, in pertinent part:

    a.    **Assigned Risk Eligibility**

    b.    You will keep records or information needed to compute premium as described in **PART FIVE – PREMIUM, G. AUDIT**, and provide us with copies of those records when we ask for them; and

    b.    You will let us audit and examine your records and otherwise fully cooperate with out attempts to conduct premium audits or inspect the workplaces.  (Emphasis in original).

### LM's AUDIT OF THE LM POLICY

37.    On various dates, LM sought to conduct an audit under the LM Policy, but HRM initially refused to cooperate.

38.    LM later ascertained that HRM made many payments to drivers that were not listed in its payroll records, and for whom adequate proof of insurance was not maintained by HRM.

39.    LM later ascertained that HRM paid remuneration to drivers that HRM contended were "owner-operators" without providing proof that the alleged "owner-operators" owned vehicles, and HRM did not provide adequate proof of insurance with respect to alleged "owners-operators."

40.    After HRM initially represented that it paid remuneration through an account maintained at Wells Fargo Bank, LM ascertained that HRM maintained a second account, at Chase Bank, through which remuneration was paid.  Notebooks maintained by HRM disclosed that drivers were paid by HRM checks, cash and checks from commonly owned/commonly managed companies.

21110381.v1

41.    HRM made substantial payments it claimed were for expenses to companies related to HRM by common ownership and/or common management. These include LCM Truck Repair, SAM Management Corp. and PSL Management. No back-up or inadequate back-up for such payments has been provided by HRM. Upon information and belief such payments represent undisclosed labor payments.

42.    LM has ascertained numerous trucks owned by HRM for which drivers do not appear on HRM's books and records. Upon information and belief, HRM maintains other bank accounts which are utilized for paying remuneration, which have not been disclosed.

43.    HRM is engaged in the trucking business, transferring waste between transfer stations in New Jersey, New York and Pennsylvania. Yet HRM maintains that it has no employee drivers.

44.    There is substantial economic interdependence between HRM, on the one hand, and the persons and entitles who provide driving/trucking labor to HRM. The latter are "cogs in the wheel" of HRM's trucking operations, without which HRM could not provide it's trucking services to the public.

45.    HRM is an interstate common carrier, authorized by Department of Transportation and Federal Motor Carrier Safety Administration. Upon information and belief, those driving for HRM do so under HRM's federal authorization number.

46.    HRM has required drivers it contends were not employees to sign Employment Contracts, see **Exhibit F** attached hereto and made part hereof.

47.    LM has reasonably estimated the premiums due under the LM Policy see **Exhibit G** attached hereto and made part hereof, setting forth a balance due of $509,205.00.

## FIRST COUNT

48.     LM repeats and realleges the allegations of paragraphs 1 to 47 as if same were set forth at length herein.

49.     By reason of the foregoing, LM has been damaged.

**WHEREFORE** plaintiff LM Insurance Corporation demands judgment against defendant HRM Enterprises LLC as follows:

a.     For full, complete and truthful disclosure of HRM's operations, remuneration and exposures;

b.     For compensatory damages;

c.     For interest;

d.     For costs of suit; and

e.     For such other and further relief as to the Court may seem just.

> **GOLDBERG SEGALLA LLP**
> s/ *Jonathan M. Kuller*
> Jonathan M. Kuller, Esq.
> Attorneys for Plaintiff
> 902 Carnegie Center/Suite 100
> Princeton, NJ 08540
> Ph. 609-986-1315 - Fax 609-986-1301
> jkuller@goldbergsegalla.com

Date:  November 7, 2018

# EXHIBIT A

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL            *Effective July 1, 1994*

## SECTION 14. NEW JERSEY WORKERS COMPENSATION INSURANCE PLAN

### ADMINISTRATIVE PROCEDURE

1. **Copies of Plan Available.** Copies of the New Jersey Workers Compensation Insurance Plan (hereinafter referred to as the "Plan") consisting of the text and three copies of the Application Form, are available to anyone without cost from the Rating Bureau. The number of sets that will be furnished is limited to avoid the accumulation of obsolete forms.

2. **Insurance Company and Employer Accept Plan.** The text is the complete Plan and establishes the obligations and responsibilities of both the employer and the designated insurance company. Each insurance company accepts all of the provisions of the Plan as a condition of membership in the Rating Bureau. The employer accepts all of the provisions of the Plan and complete responsibility for the statements in the Application Form when he affixes his signature thereto.

3. **Responsibility of Person other than Applicant** who prepares Application Form. In any case where the Application Form is secured and completed by another for the signature of the employer, it is the responsibility of the person securing and completing it to inform the employer fully of his responsibilities and the conditions under which it is applicable.

4. **Incomplete and Obsolete Application Form.** Incomplete Application Forms may be returned. If an obsolete form is submitted, an insurance company will be designated but a new form will be requested.

5. **How Insurance is Effected.** The effective date of insurance is governed by the provisions of 3:14-8, subparagraph 3 of this Manual.

6. **Employer Responsibility for Securing Insurance.** The employer is responsible for securing Workers Compensation Insurance to comply with the requirements of law with respect to its liability under the New Jersey Workers Compensation law. Except as is otherwise provided by the Statute, it is a violation of New Jersey law to engage employees unless the employer insures his liability under the Workers Compensation Law.

Every effort is made by the Rating Bureau to designate a member insurance company to provide the employer with Workers Compensation Insurance as promptly as possible after the Application has been received. Notification is sent to the designated member insurance company, to the employer, and to the designated producer, if any, but the Rating Bureau does not take any responsibility for delays caused by any circumstances whatsoever or for miscarriage of its communications. The employer should ascertain the status of the Application and of the insurance that it seeks before incurring any liability under the New Jersey

Workers Compensation Law.

7. **Credit Procedure with respect to Plan Risks** written as Regular Business. In the distribution of risks under 3:14-8, subparagraph 4 of this Manual, credit shall be allowed the member insurance companies for Plan risks written as regular business subject to the following:

   (a) The risk is insured under the Plan.

   (b) The voluntary insurance company recognizes the licensed producer authorized by the employer at the time voluntary insurance is consummated.

   (c) Credit shall begin in the month following the effective month of the policy or in the month following the occurrence of (i) or (ii) below, whichever is later.

      (i) The Rating Bureau, in its regular routine operations, determines that such risk has been written as regular business.

      (ii) The member insurance company notifies the Rating Bureau by letter that it has written such risk as regular business. The latter shall accompany the regular filing of Information Page and attaching endorsements.

If such risk is one insured under the Plan by the member insurance company that writes it as regular business, written notification (ii) above will be necessary to assure credit.

   (d) Credit for the period ending one hundred and twenty months following the effective date of the policy shall be allowed the member insurance company which removes the risk from the Plan regardless of any subsequent change in insurance company or other developments. Credit shall be discontinued if the risk again becomes insured under the Plan.

★ (e) During the first seventy-two months of the credit period the estimated annual premium at which the initial policy is originally written shall be the amount credited. Where the estimated premium is less than $10,000, the credited amount shall be doubled. During the next forty-eight months the amount credited shall be the following proportions of the premium at which the initial policy was credited:

| | |
|---|---|
| First twelve months | —80% |
| Second twelve months | —60% |
| Third twelve months | —40% |
| Fourth twelve months | —20% |

NJWC
INSURANCE PLAN

*Effective January 1, 2004*

(f) If the insurance company receiving credit cancels or refuses to renew a policy except for nonpayment of undisputed premium, it shall be the responsibility of the insurance company to notify the Rating Bureau by letter and to continue its insurance for a period of fifteen days following receipt of notice by the Rating Bureau to enable the insured to effect insurance under the Plan. It shall not be necessary under such circumstances for the insured to file any further Application Form. The responsibility of the insurance company under this paragraph shall be limited to the one hundred and twenty month credit period and shall terminate earlier upon either issuance of insurance under the Plan, or the issuance of insurance by another insurance company as regular business.

(g) The Rating Bureau shall be advised by the member insurance company of any voluntary offer to insure a Plan risk. The Bureau shall inform the employer, in writing, of the effort of the member insurance company to provide the required insurance through the normal business channels. The voluntary offer may also have required acceptance of a retrospective rating program. For purposes of application of this rule, the issuance of renewal coverage in the voluntary market constitutes an offer. Where the voluntary offer of insurance is rejected, the employer shall be subject to a surcharge of 15% applied to the standard premium.

(h) The Rating Bureau shall publish a monthly circular of Plan risk expirations and include a tabulation of current credits allowed the member insurance companies for Plan risks written as regular business. The expirations are also available in floppy disk and tape formats from ANACOMP INC. at 6330 Hedgewood Drive, Suite 250, Allentown, PA 18106. Inquiries regarding this service should be directed to that company.

Plan Risk information is also now available via the NJCRIB Web Site – http://www.njcrib.com. See 1:7 of this Manual for details.

8. Text.

New Jersey Workers Compensation and Employers Liability Insurance Manual

Part 3, Section 14

New Jersey Workers Compensation Insurance Plan Preamble. This Plan has been adopted by the insurance company members of the Compensation Rating and Inspection Bureau and approved by the Commissioner of insurance for the benefit of employers subject to the New Jersey Workers Compensation Law. It provides the means for an employer to satisfy the requirements of that law if unable to purchase Workers Compensation Insurance through normal channels. The Plan is a vehicle

© Compensation Rating and Inspection Bureau

for distributing the insurance for such employers among the members of the Compensation Rating and Inspection Bureau. In other respects the dealings between an employer and the insurance company will follow normal business routine as closely as possible.

The employer may designate a licensed producer and, with respect to any renewal of insurance under the Plan, may change the designated producer by written notice to the insurance company prior to the date of such renewal or, with the consent of the insurance company, at any other time. The name of the designated producer, if any, shall appear on the Information Page of the policy. The insurance company shall pay a fee to the producer designated by the employer based on the advance premium, subject to adjustment at the time the earned premium is determined. If, as a result of additional or return premium, the adjustment is less than five dollars, such adjustment shall be waived. The fee shall be based on New Jersey standard premium and paid at the rate of:

| | |
|---|---|
| 8% on the first | $1,000 |
| 6% on the next | 4,000 |
| 4% on the next | 95,000 |
| 2% in excess of | $ 100,000 |

Standard premium as defined in 3:3-75 of the Manual excludes any surcharges, expense constant and is prior to the application of premium discount.

Application for insurance under this Plan shall be made to the Compensation Rating and Inspection Bureau hereinafter referred to as the "Rating Bureau" and mailed to:

Compensation Rating and Inspection Bureau
60 Park Place
Newark, N.J. 07102

(1) This Plan is available to any employer in good faith entitled to insurance under the New Jersey Workers' Compensation Law, who is unable to secure insurance for his liability under that law and who does not have outstanding any uncontested unpaid premium in connection with any Workers Compensation and Employers Liability insurance in effect during the two years immediately preceding.

(2) The employer may apply to the Rating Bureau directly or through a designated producer, if any, either by personal visit or by mail, for assistance in securing the insurance. The Application shall be in writing on the Form provided by the Rating Bureau.

(3) As soon as possible after receipt of the employer's completed Application, the Rating Bureau shall designate a member insurance company to afford insurance on behalf of the employer and shall notify such insurance company, the employer and the designated producer, if any.

The effective date of the insurance shall be 12:01 A.M. on the day following the date of mailing of the

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL          *Effective July 1, 1999*

PART THREE
Section 14
(corrected 10/1/01) Page 3

Application and prescribed advance premium to the Rating Bureau as shown by the postmark on the transmittal envelope. If the postmark is not legible, or metered mail is used, the insurance will be effective at 12:01 A.M. on the day of receipt of the Application and prescribed advance premium in the Rating Bureau. If an earlier mailing date is established by proof of mailing with a recognized Post Office receipt, insurance shall be effective 12:01 A.M. on the day following the date of such mailing.

In the event an Application and prescribed advance premium are delivered to the Rating Bureau by means other than the United States Postal Service, insurance shall be made effective at 12:01 A.M. on the day following the receipt of the Application and prescribed advance premium in the Rating Bureau. The pickup date of a recognized overnight delivery or courier service shall be deemed the equivalent of the United States Postal Service postmark and coverage made effective at 12:01 A.M. on the following day. In the event there is in force a policy terminating at a date later than the date that would be fixed pursuant to this rule, or if the employer desires insurance at a later date, the employer shall indicate such a date in the Application and the Rating Bureau shall fix the date when the insurance becomes effective as 12:01 A.M. on the stated termination date of the policy in force or as of the later date specified by the employer.

The Rating Bureau shall forward to the designated insurance company one copy of the Application, the notice of the effective date of the insurance and the advance premium, same to be credited by the insurance company against the policy premium.

If the estimated annual premium is less than five hundred dollars, such estimated annual premium shall accompany the Application. If the estimated annual premium is more than five hundred dollars, the Application shall be accompanied by such estimated annual premium or forty percent thereof as advance premium but in no event less than five hundred dollars. The balance, if any, of the estimated annual premium shall be paid within 30 days after notice of premium due.

In the event that the designated insurance company and the employer agree to interim adjustment of premium, the following additional premium is required to complete the deposit premium; quarterly basis—10% of estimated annual premium, semi-annual basis—35% of estimated annual premium. Such additional premium shall be paid within 30 days after notice of premium due.

In the event Application is received without the prescribed advance premium, it will be processed and the parties notified. The effective date of the insurance will be established with due recognition of the method of dispatch, delivery and receipt of the prescribed advance premium by the designated insurance company as described above.

(4) The Rating Bureau will designate its member insurance companies to insure eligible employers by premium in like proportion to the distribution of written premiums among the insurance companies for New Jersey Workers Compensation and Employers Liability Insurance, so far as that is practicable. In this regard member insurance companies may arrange to have designated Plan policies serviced by a third party provided, however, that the contract of insurance is issued in the name of the designated member company and that all information including correspondence furnished the Rating Bureau also is in the name of the designated member company.

The reinsurance mechanism, known as the National Workers Compensation Reinsurance Pool, also is recognized as an acceptable means by which member carriers may meet their obligations under this Plan. An insurer may choose to satisfy its obligations under this Plan by subscribing to the National Workers Compensation Reinsurance Pool Articles of Agreement. In the distribution, the Rating Bureau will recognize the National Workers Compensation Reinsurance Pool by designating only servicing insurance company members thereof.

Two or more insurance companies under the same management may designate one or more of such companies to receive all of their Plan risks.

In the distribution and in accordance with the procedure authorized by the Governing Committee, credit shall be allowed for Plan risks written as regular business.

(5) The insurance shall be issued for a period of one year unless the employer requests short term insurance which may then be issued in accordance with the rules of this Manual. The insurance may be provided initially by binder.

★ (6) An insurance company may appeal to the Governing Committee for relief from any Plan or from any subsequent renewal but, pending such appeal, shall not withhold or delay the issuance of the insurance required by paragraph 3.

★ (7) Workers Compensation and Employers Liability Insurance provided under this Plan shall be subject to the rules, rates, minimum premiums, classifications, and the applicable rating plans of this Manual. Except as provided in paragraph 8, no insurance company shall charge any rate or premium other than as so determined.

(8) If, in the opinion of the insurance company, the rates or minimum premium are seriously inadequate because of unusual or abnormal hazards or because

© Compensation Rating and Inspection Bureau

NJWC
INSURANCE PLAN

PART THREE
Section 14
Page 4

*Effective July 1, 2004*

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL

of the prior loss experience of the Plan risk, the insurance company may make written request for the Governing Committee to fix rates or minimum premium which it deems adequate. The employer and designated producer, if any, shall be furnished with full particulars regarding the request of the insurance company.

A Governing Committee hearing shall be scheduled and the employer and the designated producer, if any, shall be invited to attend. Notice of the hearing shall be mailed to the insurance company and the employer and designated producer, if any, at least ten days before the date scheduled for the hearing.

The Governing Committee, following the hearing, may adopt such rates and minimum premium as, in its opinion, are both reasonable and adequate and upon approval of the Commissioner of Insurance and the insurance company shall provide the insurance in accordance therewith.

(9) Default by the employer in the payment of any Workers Compensation and Employers Liability Insurance premium, when due, shall automatically be considered as grounds for cancelation of the insurance, whether the premium has become due under the current or preceding insurance, if, after the issuance of cancelation in accordance with this paragraph, the employer pays the premium that was due, the insurance company shall:

    (a) Reinstate the insurance, without lapse, if the premium is paid before the effective date of the cancelation, or

    (b) If the premium is paid after the effective date of cancelation, the short term insurance shall be issued to expire on the same date as the expiration date of the canceled insurance,

    (c) The effective date of coverage of the short term insurance shall be determined in a manner consistent with 3:14-8, subparagraph 3 of the Plan,

    If the premium is not paid within thirty days, the insurance company shall then notify the Rating Bureau of the amount due and the Rating Bureau, after notifying the employer and designated producer, if any, shall formally withdraw the risk from the Plan. No further insurance under the Plan shall be afforded on behalf of such employer until the premium has been paid and the Rating Bureau is satisfied that the employer is in good faith entitled to insurance.

★ (10) If, after the issuance of insurance, it shall appear that the employer is not or ceases to be in good faith entitled to insurance, the insurance company

may make written request to the Rating Bureau to authorize cancellation of the insurance. The employer and designated producer, if any, shall be furnished with full particulars regarding the request of the insurance company. Upon written request of the employer, a Rating Bureau hearing may be scheduled and the employer and designated producer, if any, shall be invited to attend. Notice of the hearing shall be mailed to the insurance company, the employer and designated producer, if any, at least ten days before the date scheduled for the hearing.

If the appeal of the insurance company is based upon physical conditions of the workplaces, lack of safeguards, or failure to comply with the safety recommendations, the appeal shall be accompanied by conclusive evidence that the conditions under which the employer operates do not meet the minimum legal requirements of the State of New Jersey.

★    The Rating Bureau, following the hearing, may authorize the insurance company to cancel the insurance. If the insurance is so canceled, no further insurance under the Plan shall be afforded on behalf of the employer until the Rating Bureau is satisfied that the employer is in good faith entitled to insurance.

★ (11) Each policy of insurance issued pursuant to the provisions of the New Jersey Workers' Compensation Insurance Plan shall have attached Endorsement WC 29 03 09 "New Jersey Limited Other States Insurance Endorsement" and WC 29 03 10 "New Jersey Workers' Compensation Insurance Plan Eligibility Endorsement."

The Procedure for carrier request for termination of coverage for employer non-compliance with the provision of WC 29 03 10 shall be as follows:

    (a) Written documentation to the Rating Bureau citing the Endorsement provision(s) in violation, to include copies of carrier certified mail with return receipt requests to the employer and producer, if any, for compliance.

    (b) After review, and upon the Rating Bureau's satisfaction of the carrier's efforts, the Rating Bureau will notify the employer, and producer, if any, in writing, of the carrier's formal request for termination. Such notification will allow the employer an additional 10 days to comply with the policy provisions.

    (c) In the event of failure of the employer to respond to the Rating Bureau's notification within the prescribed time, the carrier will so inform the Bureau and the Bureau will provide the carrier with written authorization to terminate coverage.

© Compensation Rating and Inspection Bureau

NJWC INSURANCE PLAN

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL                *Effective July 1, 2004*

PART THREE
Section 14
Page 5

(d) Issuance by the carrier of the approved notice of cancellation shall provide the employer with 30 days advance notice of termination.

(e) Resultant compliance by the employer prior to, or within 30 dyas after, the effective date of cancellation shall result in reinstatement or issuance of short term insurance as provided for in 3:14-8(14)(a), (b) and (c) of the Plan.

(f) Continued non-compliance beyond the times prescribed herein will result in the employer being considered no longer in good faith entitled to coverage through the Plan until such time as the Rating Bureau is satisfied that any violations have been corrected.

(12) It shall be the obligation of the insurance company to arrange to afford renewal insurance for each employer insured by it in accordance with the provisions of this Plan. Approximately thirty days prior to the renewal date, the insurance company shall arrange for the particulars incident to the renewal of the insurance and provided the deposit premium is paid by the employer prior to the renewal date, the renewal insurance shall be issued without lapse.

The deposit premium shall not be more than the following schedule:

| Estimated Annual Premium | Program | Deposit | Additional Payments |
|---|---|---|---|
| Under $5,000 | Annual | 100% | 0 |
| $5,000-$9,999 | Semi-Annual | 75% | 1 |
| $10,000-$24,999 | Quarterly | 50% | 3 |
| $25,000 & OVER | Monthly | 25% | 8 |

The effective date of coverage of the renewal insurance shall be determined in a manner consistent with 3:14-8, subparagraph 3 of the Plan regarding method of dispatch, delivery and receipt of premium by the designated insurance company.

If insurance is not effected within sixty days of expiration the insurance company shall notify the Rating Bureau. The Rating Bureau shall inform the employer and designated producer, if any, and in the absence of premium payment leading to the issuance of insurance shall relieve the insurance company of the assignment.

**(13) Plan Premium Adjustment Program (PPAP)**

A) **Eligibility**—The Plan Premium Adjustment Program shall be applied to a risk if it qualifies for experience rating and is insured in the New Jersey Workers Compensation Insurance Plan.

B) **PPAP Formula—**

1. After the calculation of the experience modification factor (M) for the risk, a weighted ratio (R) is calculated.

$$R = \frac{(0.5 - 0.5W)\,An}{(M)\,(En)} + \frac{(0.5 + 0.5W)\,A}{(M)\,(E)}$$

where:

- W is the excess credibility
- A is the modified total losses
- An is the modified normal losses
- E is the total expected losses
- En is the expected normal losses
- M is the calculated experience modification
- R is the weighted ratio, limited to 2.0

All values except R are those used in the experience rating modification calculation.

2. If R is greater than 1.0, an adjustment factor (AF) will be calculated using the following formula:

$$AF = \frac{(0.08)\,(E)\,(R-1)^{1.25}}{(E+3)^{0.4}}$$

where:

E is the total expected losses of the particular insured (in thousands), limited to 40.

3. The adjustment factor will be shown on all experience rating forms (ERM-1). The adjustment factor will be applied to standard premium and will be applicable to all policies insuring a risk in the Plan.

C) The maximum adjustment factor is 30%. Only insureds with expected losses equal to or greater than $40,000 will be subject to the maximum adjustment. The following table shows maximum adjustments by risk expected loss size.

| Risk Expected Losses | Maximum Adjustments |
|---|---|
| To 4,999 | 6% |
| 5,000-9,999 | 9% |
| 10,000-24,999 | 14% |
| 25,000-39,999 | 23% |
| 40,000 and over | 30% |

D) **Definitions**

For the purposes of this program, the following definitions apply.



PART THREE
Section 14
Page 8

*Effective July 1, 2004*

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL

1. **Weighted Ratio—**A comparison of the modified losses to the expected losses. A ratio greater than 1.00 is subject to the PPAP. This ratio is limited to 2.00.

2. **PPAP Adjustment Factor—**The factor is applied to the standard premium. This factor is determined by the formula in B-2 using the weighted ratio in B-1.

★ (14) If the insurance company desires to be relieved of the continuing obligation to insure the employer, it shall notify the Rating Bureau, in writing, in not less than sixty days before expiration. The Rating Bureau shall relieve the insurance company of its obligation and shall designate another insurance company to provide the renewal insurance in accordance with paragraph 3.

Upon receipt by the newly designated carrier of the renewal deposit premium, the carrier may provide the employer with a new application to be fully completed, executed and returned within thirty days. Upon receipt, the carrier shall then file a copy of the application with the Rating Bureau.

Failure by the employer to comply with the provisions contained herein will result in carrier notification to the Rating Bureau. The Rating Bureau will then notify the employer and producer, if any, in writing, advising that failure to provide the required application within ten days will constitute grounds for cancellation of the coverage for non-compliance. If, after the issuance of cancellation in accordance with this paragraph, the employer submits the required application, the insurance company shall:

(a) Reinstate the insurance, without lapse, if the application is received before the effective date of cancellation, or

(b) If the application is received within thirty days after the effective date of cancellation, short term insurance sahll be issued to expire on the same date as the expiration date of the cancelled insurance.

(c) The effective date of coverage of the short term insurance shall be determined in the manner consistent with 3:14-8, paragraph (3) of the Plan.

(15) In the event that a policy issued by an insurance company is canceled because Workers Compensation and Employers Liability Insurance is to be provided by it or another insurance company as regular business, such cancelation shall be pro rata and the responsibility of the designated insurance company shall automatically terminate as of the effective date of the voluntary insurance.

© Compensation Rating and Inspection Bureau

No employer may apply to the Rating Bureau for insurance under the Plan after an insurance company has issued a renewal or offered to provide the insurance as regular business. In such cases, the employer must accept such voluntary offer, otherwise the standard premium will be subject to a 15% surcharge in accordance with 3:14-7(g) of this Manual.

It is improper for a member insurer to request that an employer be placed in the Plan before an offer of voluntary coverage is made. In each such documented situation, a monetary fine of $5,000 will be levied against the insurer.

It is improper for a licensed producer to reject an offer of voluntary coverage on behalf of an employer unless the producer has informed the employer that the 15% surcharge referenced above will be applied. In each such documented situation, where the producer has failed to notify the employer of the surcharge, a fine of $1,000 will be levied against the producer.

(16) The acceptance of the Plan is a condition of membership in the Compensation Rating and Inspection Bureau.

(17) Every insurance company which is or becomes a member of the Rating Bureau shall file an acceptance of this Plan upon such form as the Rating Bureau shall provide, as a condition of its membership in the Rating Bureau, indicating therein the location of the office of the insurance company which will handle Plan risk correspondence and the name and title of the individual in that office to whom such correspondence is to be addressed. Such insurance company shall also indicate therein whether it is or is not a member of the National Workers Compensation Reinsurance Pool and whether it is a servicing or nonservicing member thereof. The Rating Bureau authorizes the Administrator of the National Workers Compensation Reinsurance Pool to, (i) select servicing carriers to insure certain employers assigned under this Plan, (ii) to fairly and equitably allocate the expenses associated with the reinsurance provided, and (iii) to establish compensation for such servicing carriers.

(18) New Jersey may be included in Item 3C "Other States Insurance" of the information page for residual market policies issued in other jurisdictions.

(19) Terrorism Risk Insurance Act of 2002. For policies written in accordance with the New Jersey Workers Compensation Insurance Plan, the procedures set forth in 3:3-55 of this Manual are applicable.

## ACORD® NEW JERSEY WORKERS COMPENSATION INSURANCE PLAN
### APPLICATION FOR DESIGNATION OF AN INSURANCE COMPANY

DATE (MM/DD/YYYY)

COMPENSATION RATING AND INSPECTION BUREAU
60 PARK PLACE, NEWARK, NEW JERSEY 07102, (973) 622-6014

**IMPORTANT - FILE IN DUPLICATE**
Complete fully. See instruction sheet, Type or Print. Attach separate sheet, if necessary.

This employer is unable to purchase Workers Compensation and Employers Liability Insurance for its liability under the New Jersey Workers Compensation Law. At least three non-affiliated companies have declined to provide voluntary coverage. For that reason the employer applies for selection of an insurance company through the New Jersey Workers Compensation Insurance Plan.

| BUREAU FILE NUMBER | COVERAGE REQUESTED EFFECTIVE DATE | NEW JERSEY TAXPAYER IDENTIFICATION # |
|---|---|---|
| **1. NAME OF EMPLOYER** | TELEPHONE NUMBER | FEDERAL EMPLOYER ID # / SOCIAL SECURITY # |

| **2. MAILING ADDRESS (Include zip code)** | **3. DATE BUSINESS OR OPERATION BEGAN** | **4. LEGAL STATUS - IMPORTANT - REFER TO INSTRUCTIONS** |
|---|---|---|
| | | INDIVIDUAL / CORPORATION<br>PARTNERSHIP / SUBCHAPTER "S" CORP<br>OTHER |

### 5. LOCATION OF ALL NEW JERSEY SHOPS, YARDS OR WORK PLACES

| # | STREET, CITY, COUNTY, STATE, ZIP CODE | MAX # EMP PER SHIFT | # | STREET, CITY, COUNTY, STATE, ZIP CODE | MAX # EMP PER SHIFT |
|---|---|---|---|---|---|
| | | | | | |

### 6. BOOKS AND RECORDS REFLECTING PAYROLLS

WHAT RECORDS DO YOU MAINTAIN SHOWING ALL PAYROLLS, AND WHERE (LOCATION) MAY THEY BE EXAMINED?

### 7. OWNERSHIP INFORMATION

LIST BELOW NAMES, TITLES, DUTIES AND APPROXIMATE ANNUAL SALARY OF CORPORATE OFFICERS. SIMILARLY, INCLUDE ANY PROPRIETORS AND PARTNERS WHERE THE NOTICE OF ELECTION-PROPRIETORS AND PARTNERS HAS BEEN COMPLETED.  INCLUDE THEIR SALARIES IN THE PREMIUM COMPUTATIONS.  ALSO GIVE THE PERCENT OF STOCK OWNED BY EACH OFFICER AND PARTNER. ATTACH SEPARATE SHEET IF NECESSARY.

| NAME | TITLE | % OF STOCK OWNED | DUTIES | APPROXIMATE ANNUAL SALARY |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

IF YOU HAVE NOT INCLUDED THE OFFICERS, OWNERS OR PARTNERS PAYROLL IN THE PREMIUM CALCULATION, EXPLAIN:

### 8. INSURANCE RECORD

| ANY PREVIOUS NJ WORKERS COMP INSURANCE COVERAGE? | YES / NO | IF YES, WAS COVERAGE THROUGH: | PLAN / VOLUNTARY |
|---|---|---|---|
| | | REASON FOR FILING APPLICATION:<br>IF NO, | NEW BUSINESS / SELF INSURANCE / OTHER |

INSURANCE RECORD - THREE PREVIOUS YEARS (ATTACH SEPARATE SHEET, IF NECESSARY)

| STATE | LOCATION | INSURANCE COMPANY | POLICY NUMBER | POLICY PERIOD FROM | TO | GOVERNING CLASS | ANNUAL PREMIUM | AUDITED PAYROLL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

### 9. INSURANCE COMPANIES WHO HAVE OFFERED/REFUSED INSURANCE

LIST BELOW NAMES AND REPRESENTATIVES OF THREE COMPANIES WHICH HAVE REFUSED COVERAGE IN THE PAST SIXTY DAYS. THE REPRESENTATIVE NAMED MUST BE FULL-TIME EMPLOYEES OF THE INSURANCE COMPANY. IF APPLICABLE, ONE OF THESE COMPANIES SHOULD BE THE ONE PROVIDING WORKERS COMPENSATION INSURANCE TO THE APPLICANT AT THE TIME OF APPLICATION. ALSO, HAVE YOU RECEIVED ANY OFFERS OF VOLUNTARY COVERAGE?

YES / NO   IF YES, EXPLAIN ON A SEPARATE SHEET.

| INSURANCE COMPANY NAME | REPRESENTATIVE'S NAME |
|---|---|
| | |
| | |

THERE IS A 15% PENALTY SURCHARGE TO THE ANNUAL PREMIUM FOR REJECTING ANY OFFER OF VOLUNTARY INSURANCE.

ACORD 133 NJ (2004/01)   PLEASE COMPLETE REVERSE SIDE   © ACORD CORPORATION 1996

## 10. NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS

GIVE COMPLETE DESCRIPTION OF BUSINESS AND OPERATIONS INCLUDING PRODUCTS MANUFACTURED, SOLD OR SERVICED.

## 11. GENERAL INFORMATION

| EXPLAIN ALL "YES" RESPONSES; ATTACH SEPARATE SHEET IF NECESSARY | YES | NO | EXPLAIN ALL "YES" RESPONSES; ATTACH SEPARATE SHEET IF NECESSARY | YES | NO |
|---|---|---|---|---|---|
| 1. DO YOU HAVE OPERATIONS IN STATES OTHER THAN NEW JERSEY? IF YES, LIST THE STATES AND LENGTH OF TIME IN BUSINESS BY STATE: | | | 4. DO YOU OR ANY COMMONLY OWNED OR MANAGED ENTERPRISES OWE ANY UNPAID WORKERS COMPENSATION INSURANCE PREMIUM? | | |
| | | | 5. HAS ANY INSURANCE COMPANY EVER CANCELED YOUR WORKERS COMPENSATION POLICY FOR NONPAYMENT OR FOR ANY OTHER REASON? | | |
| 2. HAS THERE BEEN A NAME CHANGE OR A CONSOLIDATION, MERGER OR OTHER OWNERSHIP CHANGE DURING THE PAST THREE YEARS? IF YES, ATTACH A SEPARATE SIGNED OWNERSHIP STATEMENT ON EMPLOYERS LETTERHEAD WITH PREVIOUS BUSINESS NAME, OWNERS, INCLUDING PERCENTAGE OF STOCK, AND DATE OF CHANGE. | | | 6. YOU MUST ATTACH A COPY OF YOUR MOST RECENTLY FILED WR-30 "EMPLOYER REPORT OF WAGES PAID" OR ANY EQUIVALENT FEDERALLY REQUIRED RECORD, e.g. IRS 940, 941E, 842 OR 943 FORM. IF YOU DO NOT ATTACH THESE RECORDS, EXPLAIN. | | |
| | | | 7. DO YOU LEASE EMPLOYEES TO OR FROM OTHER EMPLOYERS? IF YES, COMPLETE SUPPLEMENTAL EMPLOYEE LEASING APPLICATION. | | |
| 3. DOES ANY OWNER NAMED IN ITEM # 7 HAVE AN OWNERSHIP INTEREST IN ANY OTHER NEW JERSEY BUSINESS? IF YES, DESCRIBE FULLY. | | | 8. DO YOU HAVE ANY TRUCKING OPERATIONS? IF YES, COMPLETE TRUCKERS SUPPLEMENTAL APPLICATION. | | |

## 12. CLASSIFICATION OF OPERATIONS

| CLASSIFICATION PHRASEOLOGY | TOTAL # OF EMPLOYEES | CLASS CODE | RATE | TOTAL WAGES | TOTAL PREMIUM EARN PREMIUM |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| CLERICAL OFFICE EMPLOYEES | | 8810 | | | |
| SALESPERSONS - OUTSIDE | | 8742 | | | |
| DRIVERS NOC | | 7380 | | | |

| | |
|---|---|
| TOTAL PREMIUM SUBJECT TO THE EXPERIENCE MODIFICATION | |
| * PREMIUM MODIFIED TO REFLECT EXP MOD | |
| OTHER PREMIUM CHARGES | |
| TOTAL ESTIMATED STANDARD PREMIUM | |
| ** PLAN PREMIUM ADJUSTMENT | |
| PREMIUM DISCOUNT (USE X TABLE), IF APPLICABLE | |
| (0900) EXPENSE CONSTANT | |
| (9740) TERRORISM RISK INSURANCE CHARGE = $ 0.01 PER $ 100 OF PAYROLL | |
| TOTAL ESTIMATED PREMIUM | |
| (0935) SECOND INJURY FUND SURCHARGE | |
| (0930) UNINSURED EMPLOYERS FUND SURCHARGE | |
| TOTAL ESTIMATED COST $ | |
| *** DEPOSIT PREMIUM WITH APPLICATION | |

*       ENTER "NONE" IF EMPLOYER IS NOT SUBJECT TO EXPERIENCE RATING.
**      IF THE RISK IS EXPERIENCE RATED THIS FACTOR IS APPLIED TO THE TOTAL ESTIMATED STANDARD PREMIUM IN ACCORDANCE WITH 2:14-81(3) OF THE MANUAL. THE FACTOR IDENTIFIED AS "PPAF" MAY BE FOUND ON THE EXPERIENCE RATING DATA (BELOW THE MODIFICATION).
***     IF ESTIMATED ANNUAL PREMIUM IS LESS THAN $800, THE DEPOSIT PREMIUM IS THE TOTAL AMOUNT, IF $800 OR MORE, SEND 40% OF THE TOTAL ESTIMATED ANNUAL PREMIUM OR $500, WHICHEVER IS GREATER.

## 13. PREMIUM PAYMENT

THE ATTACHED CHECK FOR $                    PAYABLE TO NJ WORKERS COMPENSATION WS PLAN REPRESENTS ADVANCE PREMIUM ACCORDING TO PARAGRAPH 3 OF THE PLAN.

## 14. EMPLOYER CERTIFICATION

I CERTIFY THAT I KNOW THE CONTENTS OF THIS APPLICATION AND THAT THE INFORMATION GIVEN IS TRUE, CORRECT AND COMPLETE. THE COMPENSATION RATING AND INSPECTION BUREAU WILL RELY ON THIS CERTIFICATION IN SELECTING AN INSURANCE COMPANY TO PROVIDE THE REQUESTED INSURANCE. ALSO, IN ALL MATTERS PERTAINING TO THIS INSURANCE, THE EMPLOYER WILL COOPERATE FULLY WITH THE INSURANCE COMPANY AND WILL TELL THE INSURANCE COMPANY PROMPTLY OF ANY CHANGES IN THIS INFORMATION DURING THE POLICY YEAR. IT IS FURTHER UNDERSTOOD THAT IF THERE IS WORKERS COMPENSATION LIABILITY UNDER THE LAW OF ANY OTHER STATE, OTHER ARRANGEMENT MUST BE MADE.

I UNDERSTAND THAT ANY INTENTIONAL FALSE OR MISLEADING INFORMATION CONCERNING ANY FACT IN THIS APPLICATION MAY SUBJECT ME TO PENALTIES AS ARE PROVIDED BY LAW.

| EMPLOYERS SIGNATURE AND TITLE | DATE |
|---|---|
| | |

## 15. PRODUCER CERTIFICATION

| DESIGNATED LICENSED PRODUCER, IF ANY (INCLUDE ADDRESS) | FEDERAL EMPLOYER ID #/SOCIAL SECURITY NUMBER |
|---|---|
| | |
| | TELEPHONE NUMBER |

I UNDERSTAND THAT INTENTIONAL MISSTATEMENT OF INFORMATION IN THIS APPLICATION MAY SUBJECT ME TO PENALTIES AS ARE PROVIDED BY LAW, INCLUDING, BUT NOT LIMITED TO LOSS OF LICENSE.

| PRODUCERS SIGNATURE AND TITLE | DATE |
|---|---|
| | |

ACORD 133 NJ (2004/01)

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL                    *Effective April 13, 2000*

PART THREE
Section 14
(corrected 10/1/01) Page 9

| ACORD | NEW JERSEY WORKERS COMPENSATION INSURANCE PLAN NOTICE OF ELECTION - PROPRIETORS AND PARTNERS | DATE |
|---|---|---|

(SUBMIT IN DUPLICATE)
PLEASE PRINT OR TYPE, ATTACH SEPARATE FORMS IF NECESSARY)

## NOTICE OF ELECTION - PROPRIETORS AND PARTNERS
## WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE

THIS NOTICE MUST BE COMPLETED IF ANY ENTITY IS OPERATED AS A PROPRIETORSHIP OR ANY TYPE OF PARTNERSHIP INCLUDING A LIMITED LIABILITY PARTNERSHIP OR LIMITED LIABILITY COMPANY.

THE NEW JERSEY WORKERS' COMPENSATION LAW WAS AMENDED EFFECTIVE APRIL 13, 2000. THE AMENDMENT PERMITS ELECTION BY A SELF-EMPLOYED PERSON OR PARTNERS OF ANY PARTNERSHIP INCLUDING PARTNERS OF A LIMITED LIABILITY PARTNERSHIP AND MEMBERS OF A LIMITED LIABILITY COMPANY ACTIVELY PERFORMING SERVICES ON BEHALF OF THE BUSINESS TO BE DEEMED EMPLOYEES FOR THE PURPOSE OF RECEIPT OF BENEFITS AND THE PAYMENT OF PREMIUMS. THIS ELECTION DOES NOT AFFECT THE INSURANCE OBLIGATIONS FOR EMPLOYEES OTHER THAN THE SELF-EMPLOYED PERSON, PARTNERS OR MEMBERS.

THIS ELECTION MUST BE MADE AT THE TIME THE POLICY IS PURCHASED OR RENEWED AND MUST BE EFFECTIVE AT THE INCEPTION DATE OF THE POLICY. IT IS IMPORTANT TO NOTE THAT THE ELECTION CANNOT BE RESCINDED DURING THE POLICY PERIOD AND THAT IN THE CASE OF ANY PARTNERSHIP INCLUDING A LIMITED LIABILITY PARTNERSHIP OR LIMITED LIABILITY COMPANY, ALL OF THE PARTNERS OR ALL OF THE MEMBERS MUST ELECT THE COVERAGE. YOU WILL BE REQUIRED TO PAY A PREMIUM BASED ON THE REMUNERATION AND DUTIES OF THE SELF-EMPLOYED PERSON OR EACH PARTNER OR EACH MEMBER.

THE INSURER OR INSURANCE PRODUCER SHALL NOT BE LIABLE IN AN ACTION FOR DAMAGES ON ACCOUNT OF THE FAILURE OF THE BUSINESS, LIMITED LIABILITY PARTNERSHIP, LIMITED LIABILITY COMPANY OR PARTNERSHIP TO ELECT TO OBTAIN WORKERS' COMPENSATION COVERAGE FOR A SELF-EMPLOYED PERSON, LIMITED LIABILITY PARTNER, LIMITED LIABILITY COMPANY MEMBERS OR PARTNER, UNLESS THE INSURER OR INSURANCE PRODUCER CAUSES DAMAGE BY A WILLFUL, WANTON OR GROSSLY NEGLIGENT ACT OF COMMISSION OR OMISSION.

WHETHER ELECTING OR REJECTING COVERAGE, IT WILL BE NECESSARY TO COMPLETE ALL OF THE INFORMATION REQUESTED BELOW. THIS COMPLETED FORM MUST THEN BE RETURNED TO THE CARRIER/PRODUCER. A COPY OF THIS NOTICE AND PROOF OF MAILING SHOULD BE RETAINED FOR YOUR RECORDS.

### ALWAYS COMPLETE THIS SECTION

NAME OF BUSINESS

COVERAGE IS ELECTED ☐     COVERAGE IS REJECTED ☐     BUSINESS IS A CORPORATION OR OTHER FORM OF ORGANIZATION ☐

### COMPLETE THIS SECTION ONLY WHEN COVERAGE IS ELECTED

| NAME(S) OF PROPRIETOR OR ALL PARTNERS (PLEASE PRINT) | ESTIMATED ANNUAL WAGE | DUTIES |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |

### ALWAYS COMPLETE THIS SECTION

SIGNATURE:                                    DATE:

PROPRIETOR OR A PARTNER

CRIB Form PP-1A (7/01)

ACORD 104 NJ (2001/07)                            © ACORD CORPORATION 2000

NJWC
INSURANCE PLAN

PART THREE
Section 14
Page 10 (corrected 10/1/01)                    *Effective April 1, 2000*

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL

---

**ACORD™  NEW JERSEY WORKERS COMPENSATION INSURANCE PLAN**                    DATE
SUPPLEMENTAL EMPLOYEE LEASING APPLICATION
(Submit in Duplicate)
(Please print or type. Attach separate forms if necessary.)

A labor contractor (lessor) leasing workers to another entity or entities must answer all questions on both sides of this application. Exclude any temporary help service provided. For this purpose temporary help service means a service where the labor contractor hires its own employees and assigns them to clients for temporary periods to add to the client's work force in special work situations, such as employee absences, temporary skill shortages and seasonal workloads.

Name of labor contractor: _____

1. Attach a list by jurisdiction of each name the labor contractor operated under in the last five (5) years. Also give the policy number and carrier for each workers compensation insurance policy issued to the labor contractor under each name in the past five (5) years. Attach a copy of the most recent Form WR-30 "Employer Report of Wages Paid" or its equivalent filed with the United State Internal Revenue Service by the labor contractor.

2. Attach a list of every person or entity owning a five percent (5%) or more interest in the labor contractor now. Also attach a list of all persons or entities who owned a five percent (5%) or more interest in the present business or its former business in the last five (5) years. Include the percentage of ownership for each person or entity and state whether those parties have any interest in another company.

3. For each person or entity identified above, attach a list of all other labor contractors where each such person or entity owns or owned a five percent (5%) or more interest. Attach a list of all other business these persons or entities, or combination of two or more of these persons or entities, own or owned a fifty percent (50%) or more interest now, or in the last five (5) years.

4. Attach a list by jurisdiction of each client, along with any other name(s) the client operated under in the last (5) years. Include the address, NJTIN and FEIN of each client, and a copy of the clients most recent Form WR-30 or its equivalent filed with the United States Internal Revenue Service.

5. Do any of the client firms listed have outstanding premium due on any workers compensation policy?  ☐ Yes ☐ No
If yes, list firm, amount owed, to which company, whether the amount is disputed, include explanation.

**CLIENT INFORMATION**
The labor contractor must get and submit the following documentation for each client.

| LEGAL BUSINESS NAME OF CLIENT | NJTIN | FEIN |
|---|---|---|
| COMPLETE PHYSICAL ADDRESS | PAYROLL ADDRESS (MAY BE LABOR CONTRACTOR ADDRESS) | |

1. Attach a list of the name, address, NJTIN and FEIN (if known) of each labor contractor leasing employees to the client (exclude any temporary employment, i.e. arrangements when you obtain employees for short periods to substitute for permanent employees or to meet temporary work loads.)

2. Is there a written contract between the labor contractor leasing employees and the client?  ☐ Yes ☐ No
If yes, attach a copy of this contract.

3. Attach a list of each person or entity who owns a five percent (5%) or more interest in the client firm now. Attach a list of each person or entity who formerly owned a five percent (5%) or more interest in the client firm or its predecessor or successor in the last twelve (12) months. Include the percentage of ownership for each person or entity.

4. Describe completely the kinds of operations performed by the leased employees. Give a detailed description of the business and operations conducted.

5. Based on the above description attach a list of all leased employees and their Social Security Number, classification code and wages.

6. Attach a sworn statement signed by the owner, partner or officer authorized to bind the client legally, that states:
   a. The policy number and carrier for each workers compensation insurance policy issued to the client for each name the client operated under for the preceding five (5) years.
   b. All the client's non-leased employees covered by a separate workers compensation insurance policy. In addition, the statement must give the policy number, carrier, and a list of each non-leased employee and the total payroll for each classification code.

7. Please attach a NJWCIP application for the client completing only the General Information and Locations, Classifications previous insurance and Payroll sections. Also have the client sign the NJWCIP application, if applicable, attach completed and signed NOTICE OF ELECTION PROPRIETORS AND PARTNERS.

**Labor Contractor's Statement:**
The labor contractor states they have attached all required information and it is accurate. The labor contractor further states they will tell the carrier of any changes in the information. The labor contractor agrees to give the insurance company claims information for each client as needed.

Labor Contractor Name: _____
                        [Print or Type]

Signature: _____                    Date: _____
          (Officer, owner or person authorized to legally bind the labor contractor.)

ACORD 136 NJ (2000/04)                                    © ACORD CORPORATION 1996

NJWC INSURANCE PLAN

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL          *Effective April 1, 2000*

PART THREE
Section 14
(corrected 10/1/01) Page 11

**ACORD** ™ **NEW JERSEY WORKERS COMPENSATION INSURANCE PLAN** | DATE
CLIENT SUPPLEMENTAL EMPLOYEE LEASING APPLICATION

Use this application for clients seeking to cover leased workers.

1. NAME OF EMPLOYER | FEIN

   ADDRESS

2. Do you include leased workers under your Workers Compensation Policy?  ☐ Yes ☐ No

3. Does your employee leasing company provide workers compensation insurance for your workers?  ☐ Yes ☐ No

4. If yes, is a Certificate of Insurance furnished to you?  ☐ Yes ☐ No. If yes, attach copies of the most current Certificate.

5. Name, Address, NJTIN and FEIN (if known) of each company leasing workers to you. (Exclude any temporary employment, that is arrangements when you get employees for short times to substitute for permanent employees or to meet temporary work loads.

| NAME | ADDRESS | |
|---|---|---|
| | | FEIN |
| | | NJTIN |

6. Do you have a written contract with the company leasing workers to you?  ☐ Yes ☐ No. If yes, attach a copy of the contract.

7. Describe completely the kind of operations performed by the leased workers.

8. Show the number of workers furnished and estimated payroll by work location.

| STATE | LOCATION | CLASS CODE | NO. OF EMPLOYEES | ESTIMATED PAYROLL | PREMIUM |
|---|---|---|---|---|---|
| | | | | | |

9. List the office address(es) where you keep payroll records for the leased workers and who keeps the records.

| NAME | STREET | CITY | COUNTY | STATE | ZIP |
|---|---|---|---|---|---|
| | | | | | |

10. Applicant:
    (Printer Type)

    Signature: _____    Date: _____

ACORD 135 NJ (2000/04)          ©ACORD CORPORATION 1998

NJWC
INSURANCE PLAN

PART THREE
Section 14
Page 12 (corrected 10/01/01)          *Effective April 1, 2000*

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL

**ACORD** NEW JERSEY WORKERS COMPENSATION INSURANCE PLAN
TRUCKERS SUPPLEMENTAL APPLICATION | DATE

**(Submit in duplicate)**
If space restricts a complete answer, attach answer on separate sheets of paper, in duplicate.

1. NAME
2. Business Address

3. HOME PHONE
4. FEIN | BANK

5. If you or your employees operate out of a base terminal, give terminal address(es). You must attach a list of drivers assigned to each terminal.

6. If you or your employees spend a majority of driving time in a certain state, name that State for yourself and each employee:

7. If you do not drive a majority of time in any one state, give yours and your employees' state(s) of residence:

8. Do you, or companies with whom you have contracts, use any independent owner-operators?  ☐ Yes ☐ No
   If yes, list them below:

   NAME - ALL DRIVERS | HOME ADDRESS

9. Did you have workers compensation certificates of insurance on file for each owner-operator?  ☐ Yes ☐ No
   If yes, attach copies of same. If no, is payroll included on application for coverage?  ☐ Yes ☐ No

10. Do you lease employees to other firms?  ☐ Yes ☐ No   If yes, list firm name(s) and street address(es) of locations where leased employees operate. Include Supplemental Employee Leasing Application.

11. With whom is your largest hauling contract?
    FIRM | ADDRESS

12. **Agreement of Applicant**
I certify I read and understand the statements in this application. Also, I certify the statements in this application are true and agree to the following conditions:
   A. To maintain a complete payroll transaction record as the insurance company may require, and to have these records available to the company and Rating Bureau at the business address.
   B. To obey all laws, orders, and rules of the public authorities and with recommendations made by the insurance company about the welfare, health and safety of the employees.

Business Name of Employer _____        Signature _____

Date of Application _____        Title _____

* Definitions
Base Terminal: A permanent location with central loading docks or storage facilities where a trucker regularly loads, unloads, stores or transfers freight.
State of Residence: The state where the trucker lives and files Federal income Tax returns.

ACORD 198 NJ (2000/04)          © ACORD CORPORATION 1998

TRWC INSURANCE PLAN

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL          *Effective April 1, 1994*

PART THREE
Section 14
(corr. 4/1/00) Page 13

**\* 10. Supplementary Procedure—Employers Insured Under Plans in Other States.**

(a) **Application of the Manual.** The New Jersey Workers Compensation Insurance Plan shall apply in all respects, except as is herein indicated, to insurance effected under this procedure.

(b) **Qualifying for Same Insurance Company in New Jersey as in Other States.** Any employer insured under Plans in any state other than New Jersey for Workers Compensation Insurance may qualify for designation of the same insurance company in accordance with the New Jersey Workers Compensation Insurance Plan by

   (i) contacting the designated servicing carrier, or

   (ii) filing with the Rating Bureau a New Jersey Workers Compensation Insurance Plan application with a letter or explanation in which the need for such designation is indicated.

\* (c) **Procedure.** Upon receipt of the request from the employer the designated insurance company shall compute the additional deposit premium for the extension in accordance with paragraph 3 of the Plan and shall file a copy of the New Jersey portion of the policy Information Page with the Rating Bureau. The Information Page shall be stamped WCIP (Workers Compensation Insurance Plan) to indicate the coverage has been designated. If the request is made through the Rating Bureau, it shall send a Notice of Designation to the servicing carrier, employer, and designated producer (if any). Insurance will be effected in accordance with paragraph 3 of the Plan.

(d) The procedure in (b) is optional with the employer and the insurance company designated in the other state. If it is rejected by either party, the Rating Bureau will designate an insurance company in accordance with paragraph 4 of the Plan.

(e) The procedure in (b) is available only if the insurance company designated in the other state is a member of the Rating Bureau and licensed to write Workers Compensation and Employers Liability insurance in New Jersey.

NJWC
INSURANCE PLAN

© Compensation Rating and Inspection Bureau

# EXHIBIT B

# NEW JERSEY WORKERS COMPENSATION INSURANCE PLAN
## APPLICATION FOR DESIGNATION OF AN INSURANCE COMPANY

| DATE (MM/DD/YYYY) |
| --- |
| 1/24/2017 |

**COMPENSATION RATING AND INSPECTION BUREAU**
60 PARK PLACE, NEWARK, NEW JERSEY 07102, (973) 622-6014

An Application for insurance coverage through the New Jersey Workers Compensation Insurance Plan ("Plan") shall be made to the Rating Bureau at www.njcrib.com. This form shall be used at the request of the designated member insurer which provides coverage to the insured through the Plan.

| COVERAGE ID NUMBER | COVERAGE REQUESTED EFFECTIVE DATE | NEW JERSEY TAXPAYER IDENTIFICATION # |
| --- | --- | --- |
| 0885739 | 1/25/2017 | |

| 1. NAME OF APPLICANT | TELEPHONE NUMBER | FEDERAL EMPLOYER ID #/SOCIAL SECURITY # |
| --- | --- | --- |
| HRM ENTERPRISES LLC | 6094140306 | |

| 2. a. MAILING ADDRESS (Including ZIP code) | 2. b. FULL ADDRESS OF PRINCIPAL PHYSICAL LOCATION (No P.O. Box) | 3. DATE BUSINESS OR OPERATION BEGAN | 4. LEGAL STATUS - IMPORTANT - REFER TO |
| --- | --- | --- | --- |
| 37 TAR HEELS ROAD E<br><br>HAMILTON, NJ 08619 | 37 TAR HEELS ROAD E<br><br>HAMILTON, NJ 08619 | 12/01/2016 | ☐ INDIVIDUAL  ☑ LLC<br>☐ CORPORATION  ☐ PARTNERSHIP<br>☐ SUBCHAPTER "S" CORP<br>☐ OTHER: |

## 5. LOCATION OF ALL NEW JERSEY SHOPS, YARDS OR WORK PLACES ("IF ANY" is NOT acceptable for Locations or # of Employees)

| | ADDRESS | CITY | STATE | ZIP | Max # Emp Per Shift |
| --- | --- | --- | --- | --- | --- |
| 1 | 37 TAR HEELS ROAD E | HAMILTON | NJ | 08619 | 1 |
| 2 | | | | | |
| 3 | | | | | |

## 6. BOOKS AND RECORDS REFLECTING REMUNERATION

WHAT RECORDS DO YOU MAINTAIN SHOWING ALL REMUNERATION, AND WHERE (LOCATION) MAY THEY BE EXAMINED?
PAYROLL RECORDS LOCATED AT 37 TAR HEELS ROAD E, HAMILTON NJ 08619

| AUDIT INFORMATION CONTACT NAME | TELEPHONE NUMBER |
| --- | --- |
| LUIS MAURA | 6094140306 |

AUDIT ADDRESS (Physical Location)
37 TAR HEELS ROAD E HAMILTON, NJ 08619

IF PAYROLL SERVICE IS USED PROVIDE NAME, ADDRESS AND TELEPHONE # OF SERVICE

PROVIDER NAME: _____   TELEPHONE NUMBER: _____

ADDRESS: _____

## 7. OWNERSHIP INFORMATION

LIST BELOW NAMES, TITLES, DUTIES AND APPROXIMATE ANNUAL REMUNERATION OF CORPORATE OFFICERS. SIMILARLY, INCLUDE ANY PROPRIETORS AND PARTNERS WHERE THE NOTICE OF ELECTION-PROPRIETORS AND PARTNERS HAS BEEN COMPLETED. INCLUDE THEIR REMUNERATION IN THE PREMIUM COMPUTATIONS. ALSO GIVE THE PERCENT OF STOCK OWNED BY EACH OFFICER AND PARTNER. ATTACH SEPARATE SHEET IF NECESSARY.

| NAME | TITLE | % OF STOCK OWNED | DUTIES | APPROXIMATE ANNUAL REMUNERATION |
| --- | --- | --- | --- | --- |
| ENRIQUE TUNJANO | LLC MEMBER | 100 | CLERICAL | |
| | | | | |

IF YOU HAVE NOT INCLUDED THE OFFICER'S, OWNERS OR PARTNERS PAYROLL IN THE PREMIUM CALCULATION, EXPLAIN:
MEMBER ELECTS TO EXCLUDED HIMSELF.

© 2015 New Jersey Compensation Rating And Inspection Bureau

## 8. INSURANCE RECORD

| | | | | | |
|---|---|---|---|---|---|
| ANY PREVIOUS NJ WORKERS COMP INSURANCE COVERAGE? | ☐ YES | IF YES, WAS COVERAGE THROUGH: | ☐ PLAN | ☐ VOLUNTARY | |
| | ☑ NO | REASON FOR FILING APPLICATION: | | | |
| | | IF NO, ☑ NEW BUSINESS ☐ SELF INSURANCE ☐ OTHER: | | | |

INSURANCE RECORD - THREE PREVIOUS YEARS (ATTACH SEPARATE SHEET, IF NECESSARY)

| STATE | LOCATION | INSURANCE COMPANY | POLICY PERIOD | GOVERNING CLASS | ANNUAL PREMIUMS |
|---|---|---|---|---|---|
| | | POLICY NUMBER | FROM - TO | | AUDITED PAYROLL |

## 9. INSURANCE COMPANIES WHO HAVE REFUSED INSURANCE

LIST BELOW NAMES AND REPRESENTATIVES OF THREE COMPANIES WHICH HAVE REFUSED COVERAGE IN THE PAST SIXTY DAYS. THE REPRESENTATIVES NAMED MUST BE FULL-TIME EMPLOYEES OF THE INSURANCE COMPANY. IF APPLICABLE, ONE OF THESE COMPANIES SHOULD BE THE ONE PROVIDING WORKERS COMPENSATION INSURANCE TO THE APPLICANT AT THE TIME OF APPLICATION

| INSURANCE COMPANY NAME | REPRESENTATIVE'S NAME |
|---|---|
| HARTFORD COMPANIES | LISA MOELLER |
| GUARD COMPANIES | WAJJID BRANCH |
| WESCO INS CO | GREGG LUSTIG |

## 10. NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS

GIVE COMPLETE DESCRIPTION OF BUSINESS AND OPERATIONS INCLUDING PRODUCTS MANUFACTURED, SOLD OR SERVICED.

Trucking

## 11. GENERAL INFORMATION

| | EXPLAIN ALL "YES" RESPONSES; ATTACH SEPARATE SHEET IF NECESSARY | YES | NO |
|---|---|---|---|
| 1. | DO YOU HAVE OPERATIONS IN STATES OTHER THAN NEW JERSEY? IF YES, LIST THE STATES AND LENGTH OF TIME IN BUSINESS BY STATE: | ☑ | ☐ |
| 2. | HAS THERE BEEN A NAME CHANGE OR A CONSOLIDATION, MERGER OR OTHER OWNERSHIP CHANGE DURING THE PAST THREE YEARS? IF YES, ATTACH A SEPERATE SIGNED OWNERSHIP STATEMENT ON EMPLOYER'S LETTERHEAD WITH PREVIOUS BUSINESS NAME, OWNERS, INCLUDING PERCENTAGE OF STOCK, AND DATE OF CHANGE. | ☐ | ☑ |
| 3. | DOES ANY OWNER NAMED IN ITEM #7 HAVE AN OWNERSHIP INTEREST IN ANY OTHER BUSINESS? IF YES, DESCRIBE FULLY. | ☐ | ☑ |
| 4. | HAS ANY OWNER EVER BEEN IN BUSINESS UNDER A DIFFERENT NAME? IF YES, GIVE NAME(S) AND DATE(S) OF OPERATION. | ☐ | ☑ |
| 5. | HAS ANY OWNER FILED FOR BANKRUPTCY? IF YES, GIVE DATE AND STATE OF FILING. | ☐ | ☑ |
| 6. | DO YOU OR ANY COMMONLY OWNED OR MANAGED ENTERPRISES OWE ANY UNPAID WORKERS COMPENSATION INSURANCE PREMIUMS? | ☐ | ☑ |
| 7. | HAS ANY INSURANCE COMPANY EVER CANCELED YOUR WORKERS COMPENSATION POLICY FOR NONPAYMENT OR FOR ANY OTHER REASON? | ☐ | ☑ |
| 8. | DO YOU LEASE EMPLOYEES TO OR FROM OTHER EMPLOYERS? IF YES, COMPLETE EMPLOYEE LEASING SUPPLEMENTAL REQUEST FORM. | ☐ | ☑ |
| 9. | DO YOU HAVE ANY TRUCKING OPERATIONS? IF YES, COMPLETE TRUCKERS SUPPLEMENTAL REQUEST FORM. | ☑ | ☐ |
| 10. | DO YOU USE SUBCONTRACTORS? | ☐ | ☑ |
| 11. | IF YES, DO YOU OBTAIN CERTIFICATES OF INSURANCE? | ☐ | ☑ |

12a. CURRENT CLASSIFICATION OF OPERATIONS

| CLASS DESCRIPTION | NUMBER OF EMPLOYEES | CLASS CODE | RATE | TOTAL PREMIUM BASIS | |
|---|---|---|---|---|---|
| | | | | TOTAL PAYROLL | PREMIUM |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTAL PREMIUM EXCLUDING MOD/PPAP/SURCHARGES | | | | | 0 |

12b. PROJECTED CLASSIFICATION OF OPERATIONS

| CLASS DESCRIPTION | NUMBER OF EMPLOYEES | CLASS CODE | RATE | TOTAL PREMIUM BASIS | |
|---|---|---|---|---|---|
| | | | | TOTAL PAYROLL | PREMIUM |
| TRUCKMEN- NOC & D | 1 | 7219 | 18.33 | 10,000 | 1,833 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | |
|---|---|
| TOTAL PREMIUM | 1,833 |
| INCREASED LIMITS   $500,000 | 100 |
| * EXPERIENCE MODIFICATION   None | |
| N.J.C.C.P.A.P. CREDIT | |
| OTHER PREMIUM CHANGES - | |
| TOTAL EST. STANDARD PREMIUM | 1,933 |
| ** PLAN PREMIUM ADJUSTMENT   .2 | 387 |
| (0900) EXPENSE CONSTANT | 160 |
| (9740) TERRORISM PREMIUM CHARGE - $ 0.0300 PER $100 OF PAYROLL   .03 | 3 |
| (9741) CATASTROPHE(OTHER THEN CERTIFIED ACTS OF TERRORISM) PREMIUM CHARGES - $ 0.0100 PER $100 OF PAYROLL   .01 | 1 |
| TOTAL ESTIMATED ANNUAL PREMIUM | 2,484 |
| (9935) SECOND INJURY FUND SURCHARGE   5 | 97 |
| (9936) UNINSURED EMPLOYERS FUND SURCHARGE   0.08 | 2 |
| TOTAL ESTIMATED COST (ROUNDED) $ | 2,583 |
| *** DEPOSIT PREMIUM WITH APPLICATION | 837 |

*    ENTER "NONE" IF EMPLOYER IS NOT SUBJECT TO EXPERIENCE RATING.

**   THIS FACTOR IS APPLIED IN ACCORDANCE WITH 3:14-8(13A) - (13E) OF THE MANUAL.

***  IF ESTIMATED ANNUAL PREMIUM IS LESS THAN $500, THE DEPOSIT PREMIUM IS THE TOTAL AMOUNT. IF $500 OR MORE, SEND 40% OF THE TOTAL ESTIMATED ANNUAL PREMIUM, OR $500, WHICHEVER IS GREATER.

13. PREMIUM PAYMENT (DEPOSIT)

AMOUNT DUE: $837.00

14. CERTIFICATION

I HEREBY ACKNOWLEDGE THAT I HAVE FULLY READ THE INSTRUCTIONS RELATED TO THE COMPLETION OF THIS FORM, AS WELL AS THE ABOVE STATEMENTS AND CERTIFY THAT THE FOREGOING STATEMENTS AND INFORMATION CONTAINED HEREIN ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND, THAT I, AS AN OWNER/OFFICER, AM FULLY AUTHORIZED TO SIGN THIS FORM ON BEHALF OF THE INSURED, AND TO BIND THE INSURED. I UNDERSTAND THAT UNDER NEW JERSEY CRIMINAL LAW, INSURANCE FRAUD IS PUNISHABLE BY UP TO TEN (10) YEARS IMPRISONMENT AND FINES UP TO $150,000, AS WELL AS CIVIL PENALTIES AUTHORIZED BY THE NEW JERSEY INSURANCE FRAUD PREVENTION ACT.

I UNDERSTAND THAT THE INFORMATION PROVIDED HEREIN IS MATERIAL AND WILL BE RELIED UPON BY THE COMPENSATION RATING & INSPECTION BUREAU, AS WELL AS BY THE DESIGNATED INSURANCE COMPANY, TO PROVIDE THE REQUESTED INSURANCE AND WILL BE USED TO CALCULATE MY PRELIMINARY WORKERS' COMPENSATION PREMIUM.

I ALSO UNDERSTAND THAT I HAVE A CONTINUING OBLIGATION TO PROMPTLY NOTIFY THE DESIGNATED CARRIER OF CHANGES IN:

* THE KIND OF WORK CONDUCTED BY THE BUSINESS
* THE SIZE OF AND/OR CLASSIFICATION OF OUR WORKFORCE
* THE AMOUNT OF REMUNERATION
* THE BUSINESS OWNERSHIP OR BUSINESS STRUCTURE
* CHANGE OF MAILING ADDRESS AND/OR PRINCIPAL PHYSICAL LOCATION

I AGREE TO MAKE AVAILABLE ALL RECORDS NECESSARY FOR A CARRIER OR RATING BUREAU AUDIT AND TO PERMIT THE AUDITOR OR OTHER REPRESENTATIVE TO MAKE A PHYSICAL INSPECTION OF OUR PREMISES/OPERATIONS. I UNDERSTAND THAT FAILURE TO DO THIS MAY RESULT IN TERMINATION OF THE COVERAGE PROVIDED, CIVIL PENALTIES AND/OR CRIMINAL PROSECUTION.

IT IS FURTHER UNDERSTOOD THAT IF THERE IS WORKERS' COMPENSATION LIABILITY UNDER THE LAW(S) OF ANY OTHER STATE(S), OTHER ARRANGEMENTS MUST BE MADE.

IN ACCORDANCE WITH NEW JERSEY LAW, IF I/WE INTENTIONALLY UNDERSTATE OR CONCEAL REMUNERATION, OR MISREPRESENT OR CONCEAL EMPLOYEE DUTIES, SO AS TO AVOID PROPER CLASSIFICATION FOR PREMIUM CALCULATIONS, OR MISREPRESENT OR CONCEAL INFORMATION PERTINENT TO THE COMPUTATION AND APPLICATION OF AN EXPERIENCE RATING MODIFICATION FACTOR, I/WE SHALL BE SUBJECT TO CIVIL PENALTIES AUTHORIZED BY THE NEW JERSEY INSURANCE FRAUD PREVENTION ACT, AS WELL AS PROSECUTION UNDER THE CRIMINAL LAWS OF THIS STATE.

| PRINT NAME AND TITLE | NJ DRIVER'S LICENSE # OR NJ MVC ID# |
|---|---|
| ENRIQUE TUNJANO                    MEMBER | ████████████ |
| SIGNATURE | DATE |
| ENRIQUE TUNJANO | 01/24/2017 |

15. PRODUCER CERTIFICATION

| DESIGNATED LICENSED PRODUCER, IF ANY (INCLUDE ADDRESS) | FEDERAL EMPLOYER ID #/ SOCIAL SECURITY NUMBER |
|---|---|
| AGENCY NAME:  TransAmerican Associates Inc | ████████ |
| AGENCY ADDRESS:  651 W Mount Pleasant Ave #255 | TELEPHONE NUMBER |
| CITY/STATE/ZIP:   Livingston, NJ 07039 | 9732512646 |

I HEREBY CERTIFY THAT I HAVE READ AND UNDERSTAND THE INSTRUCTIONS RELATED TO THIS FORM AND HAVE FULLY EXPLAINED THE RULES AND PROCEDURES OF THE NEW JERSEY WORKERS' COMPENSATION INSURANCE PLAN TO THE INSURED. I UNDERSTAND THAT INTENTIONAL MISSTATEMENT OF INFORMATION IN THIS FORM MAY SUBJECT ME TO PENALTIES AS ARE PROVIDED BY LAW INCLUDING, BUT NOT LIMITED TO LOSS OF LICENSE.

I FURTHER UNDERSTAND THAT UNDER NEW JERSEY CRIMINAL LAW, INSURANCE FRAUD IS PUNISHABLE BY UP TO TEN (10) YEARS IMPRISONMENT AND FINES UP TO $150,000 AS WELL AS CIVIL PENALTIES AUTHORIZED BY THE NEW JERSEY INSURANCE FRAUD PREVENTION ACT. I FURTHER CERTIFY THAT I HAVE WITNESSED THE INSURED'S SIGNATURE TO THIS FORM.

| PRINT PRODUCER'S NAME AND TITLE | PRODUCER'S NJ LICENSE # | NATIONAL PRODUCER NUMBER |
|---|---|---|
| John Rocco                    President | ██████ | 5704946 |
| PRODUCER'S SIGNATURE | DATE | |
| John Rocco | 01/24/2017 | |

REMARKS

SECTION III, QUESTION 1 - LENGTH OF TIME OF OPERATIONS IN OTHER STATES.

| PA | 0 | 1 |
|---|---|---|
| STATE | YEARS IN BUSINESS | MONTHS IN BUSINESS |
| NY | 0 | 1 |
| STATE | YEARS IN BUSINESS | MONTHS IN BUSINESS |

© 2015 New Jersey Compensation Rating And Inspection Bureau

## NEW JERSEY WORKERS COMPENSATION INSURANCE PLAN
### NOTICE OF ELECTION - PROPRIETORS AND PARTNERS

| DATE |
|---|
| 1/30/2017 |

### NOTICE OF ELECTION - PROPRIETORS AND PARTNERS WORKERS' COMPENSATION AND EMPLOYERS' LIABITLITY INSURANCE

THIS NOTICE MUST BE COMPLETED IF ANY ENTITY IS OPERATED AS A PROPRIETORSHIP OR ANY TYPE OF PARTNERSHIP INCLUDING A LIMITED LIABILITY PARTNERSHIP OR LIMITED LIABILITY COMPANY.

THE NEW JERSEY WORKERS' COMPENSATION LAW WAS AMENDED EFFECTIVE APRIL 13, 2000. THE AMENDMENT PERMITS ELECTION BY A SELF-EMPLOYED PERSON OR PARTNERS OF ANY PARTNERSHIP INCLUDING PARTNERS OF A LIMITED LIABILITY PARTNERSHIP AND MEMBERS OF A LIMITED LIABILITY COMPANY ACTIVELY PERFORMING SERVICES ON BEHALF OF THE BUSINESS TO BE DEEMED EMPLOYEES FOR THE PURPOSE OF RECEIPT OF BENEFITS AND THE PAYMENT OF PREMIUMS. THIS ELECTION DOES NOT AFFECT THE INSURANCE OBLIGATIONS FOR EMPLOYEES OTHER THAN THE SELF-EMPLOYED PERSON, PARTNERS OR MEMBERS.

THIS ELECTION MUST BE MADE AT THE TIME THE POLICY IS PURCHASED OR RENEWED AND MUST BE EFFECTIVE AT THE INCEPTION DATE OF THE POLICY. IT IS IMPORTANT TO NOTE THAT THE ELECTION CANNOT BE RESCINDED DURING THE POLICY PERIOD AND THAT IN THE CASE OF ANY PARTNERSHIP INCLUDING A LIMITED LIABILITY PARTNERSHIP OR LIMITED LIABILITY COMPANY, ALL OF THE PARTNERS OR ALL OF THE MEMBERS MUST ELECT THE COVERAGE. YOU WILL BE REQUIRED TO PAY A PREMIUM BASED ON THE REMUNERATION AND DUTIES OF THE SELF-EMPLOYED PERSON OR EACH PARTNER OR EACH MEMBER.

THE INSURER OR INSURANCE PRODUCER SHALL NOT BE LIABLE IN AN ACTION FOR DAMAGES ON ACCOUNT OF THE FAILURE OF THE BUSINESS, LIMITED LIABILITY PARTNERSHIP, LIMITED LIABILITY COMPANY OR PARTNERSHIP TO ELECT TO OBTAIN WORKERS' COMPENSATION COVERAGE FOR A SELF-EMPLOYED PERSON, LIMITED LIABILITY PARTNER, LIMITED LIABILITY COMPANY MEMBERS OR PARTNER, UNLESS THE INSURER OR INSURANCE PRODUCER CAUSES DAMAGE BY A WILLFUL, WANTON OR GROSSLY NEGLIGENT ACT OF COMMISSION OR OMISSION.

WHETHER ELECTING OR REJECTING COVERAGE, IT WILL BE NECESSARY TO COMPLETE ALL OF THE INFORMATION REQUESTED BELOW. THIS COMPLETED FORM MUST THEN BE RETURNED TO THE INSURER/PRODUCER. A COPY OF THIS NOTICE AND PROOF OF MAILING SHOULD BE RETAINED FOR YOUR RECORDS. IF YOU RECEIVED THIS FORM IN RELATION TO A RENEWAL OF INSURANCE, AND FAIL TO EXECUTE AND RETURN IT TO THE INSURER/PRODUCER, COVERAGE WILL CONTINUE AS PER THE EXPIRING POLICY.

### ALWAYS COMPLETE THIS SECTION

NAME OF BUSINESS   HRM Enterprises LLC

COVERAGE IS ELECTED ☐        COVERAGE IS REJECTED ☑        BUSINESS IS A CORPORATION OR OTHER FORM OF ORGANIZATION ☐

### COMPLETE THIS SECTION ONLY WHEN COVERAGE IS ELECTED

| NAME OF PERSON TO BE INSURED | ESTIMATED ANNUAL WAGE | DUTIES |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

### ALWAYS COMPLETE THIS SECTION

SIGNATURE:   ENRIQUE TUNJANO                                DATE:   1/24/2017

PROPRIETOR OR A PARTNER

© 2015 New Jersey Compensation Rating And Inspection Bureau

# EXHIBIT C

# NEW JERSEY WORKERS COMPENSATION INSURANCE PLAN
## TRUCKERS SUPPLEMENTAL REQUEST FORM

| | DATE |
|---|---|
| | 1/30/2017 |

1. **NAME**
HRM Enterprises LLC

2. **BUSINESS ADDRESS**
37 Tar Heels Road E
Hamilton, NJ 08619

3. **HOME PHONE**
6094140306

**BUSINESS PHONE**
6094140306

4. **FEIN** | **NJTIN**

5. If you or your employees operate out of a base terminal, give terminal address(es): You must attach a list of drivers assigned to each terminal.

| 1 | | | | |
|---|---|---|---|---|
| TERMINAL # | STREET | CITY | STATE | ZIP CODE |
| | NAME OF DRIVER | | | |

6. If you or your employees spend a majority of driving time in a certain state, name that State for yourself and each employee:

| STATE | NAME OF DRIVER |
|---|---|

7. If you do not drive a majority of time in any one state, give yours and your employees' state(s) of residence:

| STATE | NAME OF DRIVER |
|---|---|

8. Do you use any owner-operators?   ☐Yes  ☑No

| NAME OF DRIVER | STREET | CITY | STATE | ZIP CODE |
|---|---|---|---|---|

9. Do you have workers compensation certificates of insurance on file for each owner-operator?   ☐Yes  ☑No
If "NO", is payroll included on application for coverage?   ☐Yes  ☑No

10. Do you lease employees to other firms?   ☐Yes  ☑No
If "YES", list firm name(s) and street address(es) of locations where leased employees operate: Include Supplemental Employee Leasing Application.

| NAME OF FIRM | | | | |
|---|---|---|---|---|
| STREET | CITY | | STATE | ZIP CODE |

11. With whom is your largest hauling contract?

| VARIOUS CONTRACTS | | | | |
|---|---|---|---|---|
| NAME OF FIRM | | | | |
| VARIOUS CONTRACTS | HAMILTON | | NJ | 08619 |
| STREET | CITY | | STATE | ZIP CODE |

12. ## CERTIFICATION

I certify that I have read an understand the statements in this form. Also, I certify that the statements in this form are true and agree to the following conditions:

    A.  To maintain a complete payroll transaction record as the insurance company may require, and to have these records available to the company and Rating Bureau at the business address.

    B.  To obey all laws, orders, and rules of the public authorites and with recommendations made by the insurance company about the welfare, health and safety of the employees.

| HRM Enterprises LLC | ENRIQUE TUNJANO |
|---|---|
| Business Name of Employer | Signature |
| 1/24/2017 | MEMBER |
| Date | Title |

\* Definitions
Base Terminal: A permanent location with central loading docks or storage facilities where a trucker regularly loads, unloads, stores or transfers freight.
State of Residence: The state where the trucker lives and files Federal Income Tax returns.

# EXHIBIT D

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL                    *Effective January 1, 2006*

PART THREE
Section 1
Page 1

**PART 3**

## SECTION 1. APPLICATION OF MANUAL, DEFINITIONS, EMPLOYMENTS COVERED AND COMPULSORY INSURANCE REQUIREMENTS

**1. Application of this Manual.** The Rules, Classifications, Rates and Rating Plans in this Manual shall govern the writing of policies, audit of payrolls and the adjustment of premiums.

**1.1 Application to New and Renewal Policies Only.** The entire contents of this Manual have been filed with and approved by the Commissioner of Insurance to apply to new and renewal policies with an anniversary date on or after the effective date of the Manual, but not otherwise. Any amendment or supplement to this Manual made subsequent to the effective date of the Manual shall apply to new and renewal policies with an anniversary date on or after the effective date of the amendment or supplement, but not otherwise.

**1.2 Not Applicable to Outstanding Policies.** Except as may be specifically provided otherwise, neither this Manual nor any amendment or supplement to it shall apply to any policies outstanding as of the effective date of the Manual, the amendment or the supplement.

**2. Anniversary Rating Date, Definition.** The anniversary rating date is the effective month and day of the employer's first record of coverage in New Jersey and each annual anniversary thereafter. Once the anniversary rating date is established, the applicable components below apply to new and renewal policies for each annual period.

**Information Page Components:**

(a) Classifications
(b) Rates
(c) Experience Modification
(d) Increase Factor and Minimum Charge for Increased Employers' Liability, Admiralty or Federal Employers' Liability Act Limits
(e) Non-"F" Factor for U.S. Longshore Act
(f) Premium Discount
(g) Deductible Program Credit
(h) Managed Care Credit
(i) Plan Premium Adjustment Program Percentage
(j) Surcharge for Rejection of

(k) Voluntary Coverage Offer
(k) Expense Constant Charge
(l) Second Injury Fund Surcharge
(m) Uninsured Employer's Fund Surcharge
(n) Minimum Premium
(o) New Jersey Construction Classification Premium Adjustment Program
★ (p) Foreign Terrorism Premium Charge
★ (q) Domestic Terrorism, Earthquakes and Catastrophic Industrial Accidents Premium charge

The only components subject to change by this rule are classifications, rates, experience modification, New Jersey Construction Classification Premium Adjustment Program credit and the Plan Premium Adjustment Program percentage.

**Canceled/Rewritten Policies.** If a policy is canceled and rewritten by the same or another carrier, the applicable components listed above determined for the canceled policy shall apply to the new policy until they have been in effect for one year. Such new policy shall be endorsed at the end of the anniversary period with the new rates, experience modification, New Jersey Construction Classification Premium Adjustment Program, Plan Premium Adjustment Program

Percentage and classifications which shall apply for the remainder of the policy.

The other components shall remain unchanged until the expiration of the policy. The expiration month and day of such policy shall become the anniversary date.

**Exceptions:** Where a policy is canceled and rewritten within three months after its effective date, the applicable components listed above determined for the canceled policy shall apply to the new policy for its entire term. The expiration month and day of such new policy shall become the anniversary date.

Where there is a lapse in coverage of not more than three months from the expiration of a policy, the applicable components listed above determined for what would have been the normal renewal of the expired policy shall apply to the new policy for its entire term. The expiration month and day of such new policy shall become the anniversary date.

Where a policy is written for a period not more than sixteen days more or less than one year for the purpose of adjusting the policy to expire on the first day of the month nearest the anniversary date, the applicable components listed above determined for the policy shall apply for its entire term. The expiration month and day of the policy shall then become the anniversary date.

The rates and rating values for the following programs are established by the effective date of the policy to which they apply and shall not be subject to change by this rule: Rejection of Voluntary Coverage Offer; Large Risk—Large Deductible Program; Managed Care Program; Second Injury Fund Surcharge; Uninsured Employers ★Fund Surcharge, Foreign Terrorism Premium Charge; Domestic Terrorism, Earthquake and Catastrophic Industrial Accidents Premium Charge.

Retrospective rating values are established by the effective date of the Option approved under 3:12-1 of this Manual and shall not be subject to change by this rule, except the tax multiplier and excess loss premium factor in the second and third year of a three-year Retrospective Rating Option.

Three-year fixed rate policies are to be written under 3:4 of this Manual.

The Rating Bureau shall establish the anniversary date and apply this rule in all other cases.

**Multi-State Policies.** Where New Jersey coverage is endorsed to a multi-state policy, the applicable components listed above for that coverage shall be those in force as of the effective date of the endorsement, unless a New Jersey anniversary date had been established, in which case that date shall be controlling.

© Compensation Rating and Inspection Bureau

# EXHIBIT E

NEW JERSEY WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE MANUAL · Effective January 1, 1982

★ 45. Subcontractors' Employees. The Employers' Liability Insurance Law, R.S.N.J. 34:15-79, provides that if the employer is a contractor he shall be responsible for compensation to the employees of subcontractors. The proper rates based on the operations in which the contractor is engaged shall be applied to the entire payroll of employees of all subcontractors except for any such subcontractors who have furnished satisfactory evidence of such insurance.

If the contractor cannot furnish a true statement of the payroll of the employees of any subcontractor, the entire contract price of such subcontracted work shall be considered as the payroll of employees of that subcontractor.

For all piece work the entire amount paid under the contract for piece work shall be included as payroll.

Information as to coverage for subcontractors will be furnished to the carrier of the general contractor upon written request to the Rating Bureau.

★ 46. Hired Vehicles. If vehicles, including drivers, chauffeurs and helpers are employed under contract and if the owner of such vehicles has not insured its compensation obligation and furnished evidence of such insurance, the actual payroll of the drivers, chauffeurs and helpers shall be included in the payroll of the insured employer at the proper rate for the operations in which the insured employer is engaged. If such payroll cannot be obtained, one-third (1/3) of the total amount paid for the hire of such vehicles under contract shall be considered as the payroll of the drivers, chauffeurs and helpers. If the proprietor or partners who own the vehicles are also drivers, one-third (1/3) of the contract amount for the vehicles operated by such proprietor or partners shall be included in the payroll of the insured employer. Such amounts shall exclude fuel surcharge costs, in accordance with Interstate Commerce Commission regulations provided the employer's books and records are maintained to show such costs separately and in summary.

47. Travel Time. Payments made by an employer to an employee to reimburse him for time spent in traveling to or from work, or to or from a specific job, shall be considered as payroll in accordance with the provisions set forth in 3:3-30 of this Manual, and such payroll shall be assigned to the manual classification which applies to the work normally performed by such employee.

★ 47.1 Travel Expense Reimbursements and Allowances. Reimbursed expenses or flat expense allowances paid to employees shall not be considered as payroll, provided such expenses or allowances:

(a) were incurred upon the business of the employer, and

(b) are shown separately in the records of the employer for each employee, and

(c) approximate the actual expenses incurred by each employee.

The addition of this rule confirms the treatment afforded itemized reimbursed expenses and establishes the procedure applicable to flat expense allowances.

## RATES

48. Rates—Definition. Except as otherwise provided in this Manual, a rate is the unit of premium for every $100 of payroll and shall be expressed rounded to two decimal places. Rates shall not be subject to modification because of the application of the Experience Rating Plan.

49. Rates—Limitation. The rates set forth in this Manual are for insurance under Article 2 of the New Jersey Workers' Compensation Law. No rates have been included in this Manual for insurance under Article 1 of the Compensation Law.

50. Rates—Where Found. The manual rate for each classification will be found opposite the identifying code number of the classification in the table in 2:1 of this Manual.

51. Rates for Vessels Classifications are set forth in 3:6 of this Manual, entitled "Maritime or Federal Employments."

52. Rates for Federal Employers' Liability Act. The rates for classifications on the rate pages do not contemplate coverage for insurance against employers' liability under the Federal Employers' Liability Act or voluntary compensation insurance for any operations subject to that Act. Rates for such insurance are set forth in 3:6 of this Manual, entitled "Maritime or Federal Employments."

53. Classifications Which Carry the Symbol "A" or "N." Every risk described by a classification which carries either the symbol "A" or "N" on the rate pages shall be submitted by the Home Office to the Rating Bureau for specific rating.

54. Rates to be Shown in the Policy. For each classification there shall be inserted in the policy the manual rates for the appropriate classification as established by the Rating Bureau.

POLICY PREPARATION & AUDITING

**EXHIBIT F**

## EMPLOYMENT CONTRACT

**THIS EMPLOYMENT CONTRACT (this "Agreement") dated this 08th day of August, 2017**

**BETWEEN:**

HRM ENTERPRISES LLC of 37 TAR HEELS RD EAST, HAMILTON, New Jersey, 08619, With a DOT # 2942073

(the "Employer")

OF THE FIRST PART

**- AND -**

Peralta Misael J. 77 Hollynoll Dr. Hamilton, NJ 08619

(the "Employee")

OF THE SECOND PART

**BACKGROUND:**

A. The Employer is of the opinion that the Employee has the necessary qualifications, experience and abilities to assist and benefit the Employer in its business.

B. The Employer desires to employ the Employee and the Employee has agreed to accept and enter such employment upon the terms and conditions set out in this Agreement.

**IN CONSIDERATION OF** the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

**Commencement Date and Term**

1. The Employee will commence employment with the Employer on the 15 Julio, 2017 (the "Commencement Date").

2. Subject to termination as provided in this Agreement, the Employee's position is a temporary position and will end on 30th day of, January 2018. The parties acknowledge that various provisions of this Agreement survive past termination of employment.

Page 1 of 7

**Job Title and Description**

3. The initial job title of the Employee will be the following: Driver. The initial job duties the Employee will be expected to perform will be the following:
   Drive the Truck for HRM ENTERPRISES LLC, to the designated site work, load or unload the vehicle according to the owner instructions, check and verify that the truck is on perfect conditions to be driven and the vehicle, is in compliance with the safety regulations, notify the mechanic if any unsafety circumstance needs to be addressed in regards the maintenance of the truck.

4. The Employee agrees to be employed on the terms and conditions set out in this Agreement. The Employee agrees to be subject to the general supervision of and act pursuant to the orders, advice and direction of the Employer.

5. The Employee will perform any and all duties as requested by the Employer that are reasonable and that are customarily performed by a person holding a similar position in the industry or business of the Employer.

6. The Employer may make changes to the job title or duties of the Employee where the changes would be considered reasonable for a similar position in the industry or business of the Employer. The Employee's job title or duties may be changed by agreement and with the approval of both the Employee and the Employer or after a notice period required under law.

7. The Employee agrees to abide by the Employer's rules, regulations, policies and practices, including those concerning work schedules, vacation and sick leave, as they may from time to time be adopted or modified.

**Employee Compensation**

8. Compensation paid to the Employee for the services rendered by the Employee as required by this Agreement (the "Compensation") will include a salary of $ 150.00 (dollars) per day per 6 days a week.

9. This Compensation will be payable every week while this Agreement is in force. The Employer is entitled to deduct from the Employee's Compensation, or from any other compensation in whatever form, any applicable deductions and remittances as required by law.

10. The Employee understands and agrees that any additional remuneration paid to the Employee in the form of bonuses or other similar incentive remuneration will rest in the sole discretion of the Employer and that the Employee will not earn or accrue any right to incentive remuneration by reason of the Employee's employment.

11. The Employer will reimburse the Employee for all reasonable expenses, in accordance with the Employer's lawful policies as in effect from time to time, including but not limited to, any travel and entertainment expenses incurred by the Employee in connection with the business of the Employer. Expenses will be paid within a reasonable time after submission of acceptable supporting documentation.

**Place of Work**

12. The Employee's primary place of work will be at the following location:
    - 40 N Enterprise Ave. Lawrenceville, New Jersey, 08648.

**Time of Work**

13. The Employee's normal hours of work, including breaks, ("Normal Hours of Work") are as follows: **6 Days per week.**

14. However, the Employee will, on receiving reasonable notice from the Employer, work additional hours and/or hours outside of the Employee's Normal Hours of Work as deemed necessary by the Employer to meet the business needs of the Employer.

**Conflict of Interest**

15. During the term of the Employee's active employment with the Employer, it is understood and agreed that any business opportunity relating to or similar to the Employer's actual or reasonably anticipated business opportunities coming to the attention of the Employee, is an opportunity belonging to the Employer. Therefore, the Employee will advise the Employer of the opportunity and cannot pursue the opportunity, directly or indirectly, without the written consent of the Employer.

16. During the term of the Employee's active employment with the Employer, the Employee will not, directly or indirectly, engage or participate in any other business activities that the Employer, in its reasonable discretion, determines to be in conflict with the best interests of the Employer without the written consent of the Employer.

Page 3 of 7

**Non-Competition**

17. The Employee agrees that during the Employee's term of active employment with the Employer the Employee will not, directly or indirectly, as employee, owner, sole proprietor, partner, director, member, consultant, agent, founder, co-venturer or otherwise, solely or jointly with others engage in any business that is in competition with the business of the Employer within any geographic area in or around All the site jobs where HRM ENTERPRISES LLC. is getting contracts, in which the Employer conducts its business, or give advice or lend credit, money or the Employee's reputation to any natural person or business entity engaged in a competing business in any geographic area in which the Employer conducts its business.

**Non-Solicitation**

18. The Employee understands and agrees that any attempt on the part of the Employee to induce other employees or contractors to leave the Employer's employ, or any effort by the Employee to interfere with the Employer's relationship with its other employees and contractors would be harmful and damaging to the Employer. The Employee agrees that during the Employee's term of employment with the Employer and for a period of one (1) year after the end of that term, the Employee will not in any way, directly or indirectly:

    a. Induce or attempt to induce any employee or contractor of the Employer to quit employment or retainer with the Employer;

    b. Otherwise interfere with or disrupt the Employer's relationship with its employees and contractors;

    c. Discuss employment opportunities or provide information about competitive employment to any of the Employer's employees or contractors; or

    d. Solicit, entice, or hire away any employee or contractor of the Employer for the purpose of an employment opportunity that is in competition with the Employer.

19. This non-solicitation obligation as described in this section will be limited to employees or contractors who were employees or contractors of the Employer during the period that the Employee was employed by the Employer.

Page 4 of 7

20. During the term of the Employee's active employment with the Employer, and for one (1) year thereafter, the Employee will not divert or attempt to divert from the Employer any business the Employer had enjoyed, solicited, or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of the Employee's employment with the Employer.

**Contract Binding Authority**

21. Notwithstanding any other term or condition expressed or implied in this Agreement to the contrary, the Employee will not have the authority to enter into any contracts or commitments for or on the behalf of the Employer without first obtaining the express written consent of the Employer.

**Termination Due to Discontinuance of Business**

22. Notwithstanding any other term or condition expressed or implied in this Agreement, in the event that the Employer will discontinue operating its business at the location where the Employee is employed, then, at the Employer's sole option, and as permitted by law, this Agreement will terminate as of the last day of the month in which the Employer ceases operations at such location with the same force and effect as if such last day of the month were originally set as the Termination Date of this Agreement.

**Termination of Employment**

23. Where there is just cause for termination, the Employer may terminate the Employee's employment without notice, as permitted by law.

24. The Employee and the Employer agree that reasonable and sufficient notice of termination of employment by the Employer is the greater of two (2) weeks or any minimum notice required by law.

25. If the Employee wishes to terminate this employment with the Employer, the Employee will provide the Employer with the greater of four (4) weeks and the minimum required by law. As an alternative, if the Employee co-operates with the training and development of a replacement, then sufficient notice is given if it is sufficient notice to allow the Employer to find and train the replacement.

26. The Termination Date specified by either the Employee or the Employer may expire on any day of the month and upon the Termination Date the Employer will forthwith pay to the Employee any outstanding portion of the compensation including any accrued vacation and banked time, if any, calculated to the Termination Date.

27. Once notice has been given by either party for any reason, the Employee and the Employer agree to execute their duties and obligations under this Agreement diligently and in good faith through to the end of the notice period. The Employer may not make any changes to compensation or any other term or condition of this Agreement between the time termination notice is given through to the end of the notice period.

### Remedies

28. In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee agrees that the Employer is entitled to a permanent injunction, in addition to and not in limitation of any other rights and remedies available to the Employer at law or in equity, in order to prevent or restrain any such breach by the Employee or by the Employee's partners, agents, representatives, servants, employees, and/or any and all persons directly or indirectly acting for or with the Employee.

### Severability

29. The Employer and the Employee acknowledge that this Agreement is reasonable, valid and enforceable. However, if any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be changed in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Agreement will in no way be affected, impaired or invalidated as a result.

### Modification of Agreement

30. Any amendment or modification of this Agreement or additional obligation assumed by either party in connection with this Agreement will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

### Additional Terms

31. This contract is for minimum of 6 month period, to be renewed by the end of specified time on contract. It cannot be terminated by employee before the contract terms, unless there is a health impediment condition.

32. The employer has the right to terminate the employment if he suspect that the driver is under influence of alcohol and any other drugs, with out any compensation.

**Governing Law**

33. This Agreement will be construed in accordance with and governed by the laws of the state of New Jersey.

34. If, at the time of execution of this Agreement, there is a pre-existing employment agreement still in effect between the parties to this Agreement, then in consideration of and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, this Agreement will supersede any and all pre-existing employment agreements between the Employer and the Employee. Any duties, obligations and liabilities still in effect from any pre-existing employment agreement are void and no longer enforceable after execution of this Agreement.

35. This Agreement constitutes the entire agreement between the parties and there are no further items or provisions, either oral or written. The parties to this Agreement stipulate that neither of them has made any representations with respect to the subject matter of this Agreement except such representations as are specifically set forth in this Agreement.

IN WITNESS WHEREOF, the parties have duly affixed their signatures under hand and seal on this 08th of August 2017.

**EMPLOYER:**

HRM ENTERPRISES LLC

Per;

**EMPLOYEE:**

PERALTA MISAEL J.

Page 7 of 7

## EMPLOYMENT CONTRACT

**THIS EMPLOYMENT CONTRACT** (this "Agreement") dated this 7 day of June, 2017

**BETWEEN:**

HRM ENTERPRISES LLC of 37 TAR HEELS RD EAST, HAMILTON, New Jersey, 08619. With a DOT # 2942073

(the "Employer")

OF THE FIRST PART

- AND -

Perez    Lora Bryan of 1823 Olden Ave., Ewing, New Jersey, 08638.

(the "Employee")

OF THE SECOND PART

**BACKGROUND:**

A. The Employer is of the opinion that the Employee has the necessary qualifications, experience and abilities to assist and benefit the Employer in its business.

B. The Employer desires to employ the Employee and the Employee has agreed to accept and enter such employment upon the terms and conditions set out in this Agreement.

**IN CONSIDERATION OF** the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

Commencement Date and Term

1. The Employee will commence employment with the Employer on the 7th, day of June, 2017 (the "Commencement Date").

2. Subject to termination as provided in this Agreement, the Employee's position is a temporary position and will end on 15th day of December, 2017. The parties acknowledge that various provisions of this Agreement survive past termination of employment.

Page 1 of 7

**Job Title and Description**

3. The initial job title of the Employee will be the following: Driver. The initial job duties the Employee will be expected to perform will be the following:

   Drive the Truck for PRW ENTERPRISES LLC, to the designated site work, load or unload the vehicle according to the owner instructions, check and verify that the truck is on perfect conditions to be driven and the vehicle is in compliance with the safety regulations, notify the mechanic if any unsafety circumstance needs to be addressed in regards the maintenance of the truck.

4. The Employee agrees to be employed on the terms and conditions set out in this Agreement. The Employee agrees to be subject to the general supervision of and act pursuant to the orders, advice and direction of the employer.

5. The Employer will perform any and all duties as requested by the Employer that are reasonable and that are customarily performed by a person holding a similar position in the industry or business of the Employer.

6. The Employer may make changes in the job title or duties of the Employee where the changes would be considered reasonable for a similar position in the industry or business of the Employer. The Employee's job title or duties may be changed by agreement and with the approval of both the Employee and the Employer or after a notice period required under law.

7. The Employee agrees to abide by the Employer's rules, regulations, policies and practices, including those concerning work schedules, vacation and sick leave, as they may from time to time be adopted or modified.

**Employee Compensation**

8. Compensation paid to the Employee for the services rendered by the Employee as required by this Agreement (the "Compensation") will include a salary of $ 150.00 (dollars) per day per 6 days a week.

9. This Compensation will be paid one every week while this Agreement is in force. The Employer is entitled to deduct from the employee's Compensation, or from any other compensation in whatever form, any applicable deductions and remittances as required by law.

Page 2 of 7

10. The Employee understands and agrees that any additional remuneration paid to the Employee in the form of bonuses or other similar incentive remuneration will rest in the sole discretion of the Employer and that the Employee will not earn or accrue any right to incentive remuneration by reason of the Employee's employment.

11. The Employer will reimburse the Employee for all reasonable expenses, in accordance with the Employer's lawful policies as in effect from time to time, including but not limited to, any travel and entertainment expenses incurred by the Employee in connection with the business of the Employer. Expenses will be paid within a reasonable time after submission of acceptable supporting documentation.

### Place of Work

12. The Employee's primary place of work will be at the following location:
    - 40 N. Enterprise Ave, Lawrenceville, New Jersey, 08648.

### Time of Work

13. The Employee's normal hours of work, including breaks, ("Normal Hours of Work") are as follows: **6 Days** per week.

14. However, the Employee will, on receiving reasonable notice from the Employer, work additional hours and/or hours outside of the Employee's Normal Hours of Work as deemed necessary by the Employer to meet the business needs of the Employer.

### Conflict of Interest

15. During the term of the Employee's active employment with the Employer, it is understood and agreed that any business opportunity relating to or similar to the Employer's actual or reasonably anticipated business opportunities coming to the attention of the Employee, is an opportunity belonging to the Employer. Therefore, the Employee will advise the Employer of the opportunity and cannot pursue the opportunity, directly or indirectly, without the written consent of the Employer.

16. During the term of the Employee's active employment with the Employer, the Employee will not, directly or indirectly, engage or participate in any other business activities that the Employer, in its reasonable discretion, determines to be a conflict with the best interests of the Employer without the written consent of the Employer.

**Non-Competition**

17. The Employee agrees that during the Employee's term of active employment with the Employer the Employee will not, directly or indirectly, as employee, owner, sole proprietor, partner, director, member, consultant, agent, ..., investor, co-venturer or otherwise, solely or jointly with others engage in any business that is in competition with the business of the Employer within any geographic area in or around All the site jobs where GRO ENTERPRISES LLC, is getting contracts, in which the Employer conducts its business, or give advice or lend credit, money or the Employee's reputation to any natural person or business entity engaged in a competing business in any geographic area in which the Employer conducts its business.

**Non-Solicitation**

18. The Employee acknowledges and agrees that any attempt on the part of the Employee to induce other employees to leave the Employer's employ, or any effort by the Employee to interfere with the Employer's relationship with its other employees and contractors would be harmful and damaging to the Employer. The Employee agrees that during the Employee's term of employment with the Employer and for a period of one (1) year after the end of that term, the Employee will not in any way, directly or indirectly:

   a. Induce or attempt to induce any employee or contractor of the Employer to quit employment or retainer with the Employer;

   b. Otherwise interfere with or disrupt the Employer's relationship with its employees and contractors;

   c. Discuss employment opportunities or provide information about competitive employment to any of the Employer's employees or contractors; or

   d. Solicit, entice, or hire away any employee or contractor of the Employer for the purpose of an employment opportunity that is in competition with the Employer.

19. This non-solicitation obligation as described in this section will be limited to employees or contractors who were contracted by or retained by the Employer during the period that the Employee was employed by the Employer.

20. During the term of the Employee's active employment with the Employer, and for one (1) year thereafter, the Employee will not [____] or attempt to divert from the Employer any business the Employer had enjoyed, solicited or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of the Employee's employment with the Employer.

Contract Binding Authority

21. Notwithstanding any other term or condition expressed or implied in this Agreement to the contrary, the Employee will not have the authority to enter into any contracts or commitments for or on the behalf of the Employer [____] without obtaining the express written consent of the Employer.

Termination Due to Discontinuance of Business

22. Notwithstanding any other term or condition expressed or implied in this Agreement, in the event that the Employer will discontinue operating its business at the location where the Employee is employed, then, at the [____] permitted by law, this Agreement will terminate as of the last day of the month in which the Employer ceases operations at such location with the same force and effect as if such last day of the month were originally set as the Termination Date of this Agreement.

Termination of Contract for Will

23. Where there is just cause for termination, the Employer may terminate the Employee's employment without notice, as permitted by law.

24. The Employer and the Employee agree that reasonable and sufficient notice of termination of employment [____] is the greater of two (2) weeks or any minimum notice required by law.

25. If the Employee chooses to terminate his employment with the Employer, the Employee will provide the Employer with [____] notice and the minimum required by law. As an alternative, if the Employer requires [____] for training and development of a replacement, then sufficient notice is given if it is sufficient [____] the Employer to find and train the replacement.

26. The Termination Date of [____] by either the Employee or the Employer may expire on any day of the month and upon the Termination Date the Employer will forthwith pay to the Employee any outstanding portion of the [____] including accrued vacation and banked time, if any, calculated to the Termination Date.

27. Once notice has been given by either party for any reason, the Employee and the Employer agree to execute their duties and obligations under this Agreement diligently and in good faith through to the end of the notice period. The Employer may not make any changes to compensation or any other term or condition of this Agreement between the time termination notice is given through to the end of the notice period.

### Remedies

28. In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employer agrees that the Employer is entitled to a permanent injunction, in addition to and not in limitation of any other rights and remedies available to the Employer at law or in equity, in order to prevent or restrain any such breach by the Employee or by the Employee's partners, agents, representatives, servants, employees, and/or any and all persons directly or indirectly acting for or with the Employee.

### Severability

29. The Employer and the Employee acknowledge that this Agreement is reasonable, valid and enforceable. However, if any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be changed in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Agreement will in no way be affected, impaired or invalidated as a result.

### Modification of Agreement

30. Any amendment or modification of this Agreement or additional obligation assumed by either party in connection with this Agreement will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

### Additional Terms

31. This contract is valid until the specified future period, to be renewed by the end of specified time on contract. It cannot be terminated by any of the parties before the contract terms, unless there is a health impediment condition.

32. The employer has the right to terminate the employment if he suspect that the driver is under influence of alcohol and or other drugs, without any compensation.

Governing Law

33. This Agreement will be construed in accordance with and governed by the laws of the state of New Jersey.

34. If, at the time of execution of this Agreement, there is a pre-existing employment agreement still in effect between the parties to this Agreement, then in consideration of and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, this Agreement will supersede any and all pre-existing employment agreements between the Employer and the Employee. Any duties, obligations and liabilities still in effect from any pre-existing employment agreement are void and no longer enforceable after execution of this Agreement.

35. This Agreement is the entire agreement between the parties and there are no further items or provisions, either oral or otherwise. The parties to this Agreement stipulate that neither of them has made any representation with respect to the subject matter of this Agreement except such representations as are specifically set forth in this Agreement.

IN WITNESS WHEREOF, the parties have duly affixed their signatures under hand and seal on this 7 day of June, 2017.

EMPLOYER:

HRM ENTERPRISE

Per:

EMPLOYEE:

BRYAN LORA

Page 7 of 7

# EXHIBIT G

# INVOICE



HRM ENTERPRISES LLC
37 TAR HEELS ROAD E
HAMILTON NJ 08619

TRANSAMERICAN ASSOCIATES INC
651 W MT PLSNT AVE STE 255
LIVINGSTON NJ 070391600

| | |
|---|---|
| ACCOUNT NO: | 3-372832-0000 |
| BILLING DATE: | 01/09/2018 |
| INVOICE NO: | 12805027 |

**HRM ENTERPRISES LLC**

**AMOUNT DUE**

Previous Balance 147,027.00

| Policy | Transaction | New Charges |
|---|---|---|
| WC5-33S-372832-017 | Workers Compensation - Cancellation Audit/Adjustment | 166,056.00CR |
| WC5-33S-372832-017 | Workers Compensation - Unbilled Premium | 513,547.00 |
| WC5-33S-372832-017 | Workers Compensation - NJ Second Injury Fund | 6,905.00CR |
| WC5-33S-372832-017 | Workers Compensation - Unbilled Premium | 21,360.00 |
| WC5-33S-372832-017 | Workers Compensation - Unbilled Premium | 342.00 |
| WC5-33S-372832-017 | Workers Compensation - NJ Uninsured Employers Fund | 110.00CR |
| | Total New Charges | 362,178.00 |
| | **Balance** | **509,205.00** |

*Pay your invoice online at www.libertymutualvantageport.com.
*Please refer to the reverse side for important information.
*Due dates of the previous balance are not subject to change.

FOR INVOICE QUESTIONS OR CONTACT INFORMATION CHANGES, CONTACT LIBERTY MUTUAL INSURANCE
AT 800-653-7893 OR E-MAIL: IMS@LIBERTYMUTUAL.COM
FOR COVERAGE QUESTIONS CONTACT YOUR PRODUCER

PLEASE DETACH AND REMIT ORIGINAL WITH PAYMENT TO THE BOTTOM RIGHT ADDRESS - NOT AN OVERNIGHT MAILING ADDRESS

**Liberty Mutual**
INSURANCE

**PAYMENT DUE BY:** 01/29/2018

| | |
|---|---|
| BILLING DATE: | 01/09/2018 |
| ACCOUNT NO: | 3-372832-0000 |
| INVOICE NO: | 12805027 |
| BALANCE: | **509,205.00** |

**AMOUNT PAID $** _____  _____

HRM ENTERPRISES LLC
37 TAR HEELS ROAD E
HAMILTON NJ 08619

Liberty Mutual Insurance
P.O. BOX 2027
KEENE NH 03431-7027

703003728320000000012805027000000000000000000000000000000005092050005



**HRM Enterprises LLC**
**37 Tar Heels Rd E**
**Hamilton NJ 08619**

Send Payments to:
Attn: Payment Processing
62 Maple Avenue
Keene NH 03431

**Div**
3

**Account #**
372832

### Statement of Account As Of
06/08/17

01/25/17-11/16/17

| Bill Date | Policy | Transaction | AMOUNT |
|-----------|--------|-------------|--------|
| 02/01/17 | | Payment Received-Thank You! | ($837.00) |
| 02/06/17 | WC5-33S-372832-0117 | Surcharge & Assessment | $2.00 |
| 02/06/17 | WC5-33S-372832-0117 | Policy Premium | $2,484.00 |
| 02/06/17 | WC5-33S-372832-0117 | Surcharge & Assessment | $97.00 |
| 02/24/17 | | Payment Received-Thank You! | ($1,746.00) |
| 09/27/17 | WC5-33S-372832-0117 | Surcharge & Assessment | $93.00 |
| 09/27/17 | WC5-33S-372832-0117 | Endorsement | $141,069.00 |
| 09/27/17 | WC5-33S-372832-0117 | Surcharge & Assessment | $5,865.00 |
| 01/09/18 | WC5-33S-372832-0117 | Surcharge & Assessment | ($110.00) |
| 01/09/18 | WC5-33S-372832-0117 | Surcharge & Assessment | $342.00 |
| 01/09/18 | WC5-33S-372832-0117 | Surcharge & Assessment | $21,360.00 |
| 01/09/18 | WC5-33S-372832-0117 | Surcharge & Assessment | ($6,905.00) |
| 01/09/18 | WC5-33S-372832-0117 | Billed Adj. | $513,547.00 |
| 01/09/18 | WC5-33S-372832-0117 | Final Audit | ($166,056.00) |
| | | **Balance Due** | **$509,205.00** |



**Liberty Mutual**
**INSURANCE**

Send Payments to:
Attn: Payment Processing
62 Maple Avenue
Keene NH 03431

HRM Enterprises LLC
37 Tar Heels Rd E
Hamilton NJ 08619

**Div**
3

**Account #**
372832

## Earned Premium Statement As Of
06/08/17

| Bill Date | Policy | Transaction | AMOUNT |
|---|---|---|---|
| 01/25/17-11/16/17 | WC5-33S-372832-0117 | Earned Premium | $491,044.00 |
| 01/25/17-11/16/17 | WC5-33S-372832-0117 | Surcharge/Assessments | $20,744.00 |
| 02/01/17 | | Payment Received-Thank You! | ($837.00) |
| 02/24/17 | | Payment Received-Thank You! | ($1,746.00) |
| | | **Balance Due** | **$509,205.00** |